*Fairfield*,
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

## JOHNSON and another *against* The CONNECTICUT BANK.

Though the legal title to personal property, on the death of the owner, vests in his legal representatives, who are accountable therefor to the creditors and legatees; yet where a testator gave to his wife by his will, one-half of his personal property, with permission to take his household furniture, at a specified valuation; it was held, 1. that this provision made for the wife, being beneficial to her, her assent would be presumed until the contrary was shewn; 2. that the title to her share of the property being thus perfected in her, it was rendered liable to be taken on execution for the payment of her debts.

Circumstances furnishing evidence of assent.

The interest of *A* in personal property, held by her jointly with others, may be taken on an execution against her.

If personal property legally vested in executors be taken on an execution against a third person, such executors have adequate remedy at law, in an action of trespass or trover; consequently, a bill in chancery founded on such taking, is not sustainable.

Where executors claiming certain property, resorted to a court of chancery to restrain certain creditors from taking it, on the ground that it was needed for the payment of the debts of their testator; and it was not shewn, that it was in fact so needed, but the reverse appeared; it was held, 1. that the plaintiffs were not entitled to the relief sought; 2. that if the fact were otherwise, still, in the absence of insolvency, the remedy would be at law.

Where the plaintiffs in a bill in chancery sought to restrain the defendants from taking and selling on execution specific articles of property, on the ground that they consisted of family relics, family pictures and gifts from deceased friends, of great interest and value to the plaintiffs; and it was found, that the only articles within that description of property, which had been levied upon, were four ottomans, four vases, a solar lamp and a china tea set, which articles had been given, in the life-time of the testator, to his wife, (now his widow,) by friends and relatives, as family presents; she was not a party to the suit; and the plaintiffs did not offer to pay the value of the articles which they sought to protect; it was held, that a court of equity would not interfere.

In such case, it would not strengthen the plaintiffs' claim, that the execution debtor had more than sufficient to pay all her debts other than the property in question.

A naked trust in one for the benefit of another, without any discretionary power in the trustee as to the appropriation, does protect the property from liability for the debts of the *cestui que trust*.

If, in such case, the legal rights of the trustee have been invaded, he has adequate remedy at law.

Where the plaintiffs in such bill alleged, that the defendants threatened and were about to levy their execution upon the real estate of the deceased; and that such levy would not only be illegal, but would greatly embarrass the settlement of the estate; and it appeared, that the time limited for the settlement of the estate had long since expired, without any manifestation of a desire, by the plaintiffs, to complete the settlement; it was

*Fairfield,*
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

held, 1. that the interference of the court, in the manner claimed, would enable the plaintiffs, by their delay, effectually to shield the property of the debtor from the claims of her creditors; but 2. the levy of an execution upon her life estate in the realty, would not affect proceedings in relation to the settlement of the estate concerning the personalty.

THIS was a bill in chancery, praying for an injunction.

The plaintiffs alleged, that on the 25th day of *October,* 1846, *Samuel W. Johnson* died, leaving a will, by which he gave and devised to his wife *Susan,* the use of one-half of all his real estate, during her life, and one moiety of all his personal property, for her sole use and benefit. And to avoid the trouble of an inventory of the personal property in his dwelling-house, she was permitted to take the whole, at 2,000 dollars, or deliver any part of it to his children, at such a valuation, as might be agreed upon, by her and them. All the rest and residue of his estate, was given to his four children, *viz.*, the plaintiffs, and *Robert Charles Johnson* and *Elizabeth Devereaux,* to be equally distributed between them. The plaintiffs were appointed executors, and *William Samuel Johnson,* one of the plaintiffs, was appointed trustee, for said *Susan,* of the real and personal estate given to her by the will. By a codicil, the testator, after stating the embarrassments of his son *Robert Charles Johnson,* and his large indebtedness to the testator, revoked the devise and bequest of the share given to him in his will, and gave the same to the plaintiffs, his executors, whom he appointed special trustees of said share, to hold and occupy the same, and apply the income thereof, for the benefit of their mother.

The plaintiffs then averred, that they accepted the trusts conferred upon them by the will; made and returned to the court of probate an inventory; that the debts of the testator, as allowed by them, amounted to about 9,800 dollars, and his liabilities as surety, to more than 8,000 dollars, a part of which the plaintiffs had paid, and for the residue they might be called upon to pay out of the personal estate of the deceased; that the estate was unsettled—a large amount of debts being unpaid; and that all the personal estate might be required to liquidate them; that there had been no distribution of the estate; and the said *Susan* had never accepted the provision made for her, in relation to the furniture, nor taken the same, or any portion of it, as her own

*Fairfield,*
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

property, but it belonged to the estate of the deceased, and to the plaintiffs, as his children, heirs and executors, and has remained in their hands and possession.

The plaintiffs further averred, that on the second *Tuesday* of *February,* 1849, before the superior court for the county of *Fairfield,* the defendants recovered sundry judgments against the said *Susan,* amounting to about the sum of 3,400 dollars, upon which they took out executions, and caused one of them to be levied upon said furniture, and various other articles of personal property, belonging to said estate, and were about to sell the same, for the purpose of paying said execution ; and threatened, and were about, to levy the other executions upon the real estate of the deceased.   That if the personal estate, so levied upon, should not be wanted for the payment of the debts and liabilities of the testator, still the plaintiffs, as his children and heirs, are very unwilling that the furniture should be sold for the payment of the debts of the said *Susan,* because most of it are family relics, descended from many generations, and of inestimable value to them, on that account ; that among the articles are many gifts from deceased friends and relatives, family pictures, and other property of that description, which the testator was not only desirous to have retained in the family, but which the plaintiffs were exceedingly anxious to retain.

They also averred, that the said *William Samuel Johnson* accepted the trust conferred upon him by the will, and had acted as such trustee ; and that the said *Susan* had no estate, real or personal, which could lawfully be taken ; but that, if she had such an interest in the estate of the deceased as could be lawfully taken, she had more than sufficient for the payment of her debts, other than that levied upon as aforesaid ; that the sale of the personal property levied upon would be illegal and unjust, and would work irreparable injury to the plaintiffs ; and that the levy of the executions upon the real estate would not only be illegal, but would embarrass the settlement of the estate.

The bill then prayed for an injunction against the sale of the property levied upon as aforesaid, and the further intermeddling with the estate of the deceased, under said executions.

The bill was dated *May* 29th, 1849.

*Fairfield,*
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

This cause was referred to a committee, who, among other matters, found, that the testator died leaving a will and codicil, as set forth in the bill, which were afterwards, on the 4th day of *November*, 1846, duly proved, and approved by the court of probate ; that the plaintiffs accepted the trust of executorship, caused an inventory of the estate to be made, amounting to 69,906 dollars, of which 32,092 dollars, 9 cents, was in real estate ; that *Edwards Johnson,* one of the plaintiffs, made oath before the court of probate, that the inventory was a true and perfect one. It embraced two bonds against *William S. Johnson,* one of the plaintiffs, appraised at 3,946 dollars, 15 cents, and an amount against the said *Edwards Johnson* of 657 dollars, 10 cents. The court of probate allowed one year from the time of the probate of the will for the settlement of the estate.

The debts of the testator, as rendered to the plaintiffs, amounted to 10,252 dollars, 31 cents, of which 2,559 dollars, 43 cents, remained unpaid ; and his liabilities, as surety for the said *Edwards,* to 8,216 dollars, of which 5,936 dollars were still outstanding.

These claims had never been exhibited to the court of probate ; nor had there been any division or distribution of the furniture, or other property of the deceased ; and the plaintiffs had never settled their administration amount.

The testator, in his life-time, executed an instrument in writing, assigning the said two bonds against the said *William S. Johnson,* and certain other bonds not embraced in the inventory, to his wife *Susan Johnson ;* and this instrument and the bonds were found by the plaintiffs, after his decease, among his papers, in a package with his will and codicil.

*William S. Johnson* accepted the appointment of trustee under the will, and acted as such. The personal property in the dwelling-house, valued in the will at 2,000 dollars, was appraised at 1,741 dollars, 50 cents, only, and remains in the dwelling-house, as it was before the death of the testator.

The said *Susan* being far advanced in years, by an arrangement made, soon after the death of her husband, between her and her children, including the plaintiffs, acting as such children and executors, the said *Edwards Johnson* with his family moved into the dwelling-house of the deceased, the

*Fairfield,*
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

whole constituting one family, with the intent, on the part of the executors, that such arrangement should continue during her life, for her comfort and convenience ; and that no distribution of the said furniture or other moveable property should be made, during her life. She, at all times, so far as she pleases, uses and controuls the furniture and other moveable property ; and the said *Edwards* and his family, at the same time, use the property, in like manner, for their comfort and convenience.

There was no explicit act or declaration ever made by her, accepting the provision made for her in the will, or for the purpose of taking possession of said property ; nor have the plaintiffs, by any explicit act or declaration, ever assented to the bequest to her. But whether there had been such acceptance and possession by her, with the assent of the plaintiffs, was a matter left depending upon the inference to be drawn from the facts aforesaid.

The averments in the bill, respecting the judgments recovered by the defendants against the said *Susan,* and their proceedings upon the executions issued upon said judgments, were found to be true, as therein stated ; that a part of the articles levied upon, *viz.,* four ottomans, a solar lamp, four vases, and a china tea set, were articles given to her in the life-time of her husband, by friends and relatives, as family presents.

The judgments were rendered upon several promissory notes, drawn by the said *Edwards,* payable to the order of the said *Susan,* and by her endorsed, at his request, and for his accommodation, for the purpose of enabling him to procure them to be discounted by the defendants, for his benefit; and the defendants were induced to discount them, by his representation made to the directors of the bank, that she was abundantly responsible for the amount of all her endorsements, by reason of a large amount of property bequeathed to her, by the will of the testator; and had it not been for such representations, said notes would not have been discounted, by the defendants.

The case was reserved for the advice of this court as to what decree should be passed.

*Bissell* and *Loomis,* for the plaintiffs, contended, 1. That

upon the facts found, *Susan Johnson* had no interest in the estate of *Samuel W. Johnson*, deceased, which could be taken on execution, and applied to the payment of her debts. In the first place, upon the death of *Samuel W. Johnson*, the legal title to all his personal estate vested in his executors. 1 *Sw. Dig.* 444. 445. *Roorbach* v. *Lord*, 4 *Conn. R.* 347. *Taber* v. *Packwood*, 1 *Day*, 150. *Beecher* v. *Buckingham*, 18 *Conn. R.* 120. 121. *Perkins*, admr. v. *Stone*, 18 *Conn. R.* 270. 274. *Schuyler* v. *Hoyt*, 5 *Johns. Ch. R.* 196. This rests upon the very obvious principle, that they are accountable to creditors and legatees for the property which comes into their hands. 1 *Sw. Dig.* 156. *Wheeler* v. *Swan*, 4 *Day*, 137. *Roorbach* v. *Lord*, 4 *Conn. R.* 347. Secondly, there is nothing in the finding of the committee, which divests the title thus vested in the executors, or which takes the case out of the operation of the general principle. It is no answer that the one-half of the personal estate was devised to Mrs. *Johnson*. *Taber* v. *Packwood*, 1 *Day*, 150. Nor that the executors have not settled the estate, in conformity to the requirements of their probate bond. Nor that Mrs. *Johnson* has elected to take the furniture in the house. She has made no election ; nor can that inference be drawn from the facts found by the committee. Nor is it any answer to say, that the property may not be wanted for the payment of debts.

2. That in regard to all the property devised to Mrs. *Johnson*, the will of *S. W. Johnson* creates a *trust ;* and the legal title vests in the trustee. See the language of the will. No precise form of words is necessary to the creation of a trust. It is sufficient that the intention of the testator can be clearly understood. *Lewin* on *Trusts*, 76, 77. (8 *Law Library*, 40.) See also *Cary* v. *Cary*, 2 *Scho. & Lef.* 189. *Paul* v. *Compton*, 8 *Ves.* 380. *Harding* v. *Glyn*, 1 *Atk.* 469. *Huxton* v. *Corse*, 2 *Barb. Ch. R.* 506. *Bull* v. *Bull*, 8 *Conn. R.* 47. *Malim* v. *Keightly*, 2 *Ves. jr.* 333. 235. *Parsons* v. *Baker*, 18 *Ves.* 476. 2 *Sw. Dig.* 156. *Hill* on *Trustees*, 229. 232. 234. 305. 64. 65. *Harton* v. *Harton*, 7 *Term R.* 652. 1 *Cruise's Dig. tit.* 12. *ch.* 1. § 25. *Morice* v. Bishop of *Durham*, 10 *Ves.* 537. Countess of —— v. Duke of *New-Castle*, 12 *Ves.* 227. *Schuyler* v. *Hoyt*, 5 *Johns. Ch. R.* 196.

*Fairfield,*
June, 1851.

Johnson
v.
The Connecticut Bank.

3. That this is a case in which it is proper for the court to interfere, by way of injunction. In the first place, if our views of the case are correct, the defendants can derive no benefit from a sale. Secondly, the nature and condition of the property require the interposition of the court.

*Dutton,* for the defendants, contended, 1. That the plaintiffs could not recover, unless they shewed some equity, as executors of *S. W. Johnson ;* and that as such, they need no relief : because, first, they have abundant property left in their hands to pay all debts, &c., against the estate. The present amount is 25,036 dollars, 60 cents. In addition to this, the payment of the debts against *Edwards Johnson,* amounting to 8,216 dollars, would create a debt in favour of the estate to an equal amount. *Smith* v. *Kearney,* 2 *Barb. Ch. R.* 533. Secondly, they have neglected settling the estate for a long time, and have declared their intention not to settle it, as long as Mrs. *Johnson* lives. The court will not help them to violate their duty and injure creditors. Thirdly, they have adequate remedy at law. If they still have the title, it is a *legal* title. The value of the property will answer their purpose, as well as the property itself. *Warner* v. *Paine,* 3 *Barb. Ch. R.* 630.

2. That if it is said, that the plaintiffs sue also as heirs at law, the answer is, first, that they cannot sue in both capacities. The bill would be multifarious. 2 *Sw. Dig.* 202. A bill against two executors, and one of them as heir, was dismissed. *Cooper's Eq.* 182, 183. *Ward* v. *Duke of Northumberland,* 2 *Anstr.* 469. Secondly, they shew no equitable right, as heirs. The articles of peculiar value found by the committee, were gifts to Mrs. *Johnson,* and not such as equity would protect for the heirs. Thirdly, if there is any equity, the daughter ought to have joined, having more reason to claim these articles.

3. That if it is claimed, that *W. S. Johnson* is a trustee, the defendants say, first, the will gives him no title, but a mere supervision. *Pow.* on *Dev.* 193. 1 *Sw. Dig.* 137. *Mansfield* v. *Mansfield,* 6 *Conn. R.* 559. Secondly, if he has any claim as trustee, he should have sued alone. Thirdly, he would have adequate remedy at law : he would have the legal title.

4. That the execution was levied according to law.  First,
Mrs. *Johnson* had a legal title to the property.  Secondly,
if she had only an equitable title, *that* was liable to be taken.
The great principle of our law regulating the intercourse of
debtor and creditor, is, that all the property of the debtor
should be liable to be taken.    *Davenport* v. *Lacon* & al. 17
*Conn. R.* 278.   An equity of redemption in real estate is
always liable ; so is an equity of redemption in chattels.
*Magee* v. *Carpenter*, 4 *Ala. R.* 469.    *McDonald* v. *Foster*,
5 *Ala. R.* 664.   So also is a trust estate in land.    *Daven-*
*port* v. *Lacon* & al. *ubi. sup.*    *Thompson* v. *Whatley*, 5 *Sm.*
& *Mar.* 499.    *Evans* v. *Wilder*, 5 *Miss. R.* 313.   If *W. S.*
*Johnson*, a non-resident, could be trustee, and Mrs. *Johnson*
have the sole beneficial interest and possession, they could,
if a contrary doctrine prevailed, set the creditors at defiance.

5. That the legacies had become *vested* in Mrs. *Johnson.*
The committee find, that *W. S. Johnson* acted as trustee,
and paid money to her, as such.   His title, as executor, then
had ended.   No express assent is necessary in this state.
*Goodwin* v. *Chaffee*, 4 *Conn. R.* 163.   1 *Sw. Dig.* 460.
Mrs. *Johnson's* receiving money as *cestui que trust*, proves
her assent.   The whole conduct of the family shews the
same thing.   *Trover* will lie, by a legatee, for goods set
aside by the executor, and said by him to belong to the lega-
tee.   *Dimond* v. *McDonald*, 7 *Watts*, 510.   The declarations
of *Edwards Johnson*, one of the executors, to the *Connecti-*
*cut Bank*, are evidence of the assent of the executors to
Mrs. *Johnson's* taking the legacy.

6. That the plaintiffs cannot recover, they being estop-
ped ; first, because the bank loaned the money on the
strength of *Edwards Johnson's* declarations of what his
mother took by the will.   The bank of course understood
him to mean, that her property was within reach.   *Roe* v.
*Jerome*, 18 *Conn. R.* 443.   *East-Haddam Bank* v. *Shailor*,
19 *Conn. R.* 18.   *Kinney* v. *Farnham*, 17 *Conn. R.* 361.
*Bushnell* v. *Church*, 15 *Conn. R.* 406. 419.   *Pickard* v.
*Sears*, 6 *Adol. & Ell.* 469. (33 *E. C. L.* 115.)   *Brown* v.
*Wheeler*, 17 *Conn. R.* 353.   Secondly, if he is bound, both
of the executors are : each executor may discharge a claim.
*Lewin* on *Trusts*, 280. (8 *Law Lib.* 142.)   1 *Sw. Dig.* 449.
The executors can bind themselves, by an award, and of

course, by an estoppel. *Alling* v. *Munson,* 2 *Conn. R.* 691. *Sugd.* on *Powers,* 1.

WAITE, J. We see no ground upon which the present suit can be maintained.

1. It is, in the first place, said, that upon the death of the testator, the legal title to the personal property vested in the plaintiffs, as executors ; and that they are accountable to the creditors and legatees for all that comes into their hands. This is undoubtedly so ; and that title still remains in them, unless they have parted with it, in whole or in part. *Beecher* v. *Buckingham,* 18 *Conn. R.* 120, 1. *Perkins,* admr. v. *Stone* & al. 18 *Conn. R.* 277. *Roorbach* v. *Lord* & al. 4 *Conn. R.* 347. *Taber* v. *Packwood,* 1 *Day,* 151.

But, in the present case, the testator, by his will, gave to his wife one-half of all his personal property, and the use of one-half of his real estate, with permission to take his household furniture at a specified valuation, or deliver any part of it to his children, at such price as might be agreed upon, by them. The residue of his property was given to his children.

This provision made for the wife, was clearly beneficial to her ; and her assent will be presumed until the contrary is shewn. As soon as the assent of the executors is given to this bequest to her of the personal property, her title becomes perfected, and her share rendered liable to be taken on execution for the payment of her debts.

But it is claimed, that this assent has never been given. It is indeed found, that it has never been done, by any explicit act or declaration. This is not required. It may be implied, as well as expressed. It is found by the committee, that very soon after the death of the testator, an arrangement was made, by her and the plaintiffs and the other children of the deceased, that *Edwards Johnson,* one of the plaintiffs, with his family, should move into the house with her, and occupy the furniture and other moveable property at pleasure, with the intent that such arrangement should continue for her life ; and that they have so occupied and possessed the property, ever since the arrangement was made ; that *William S. Johnson* accepted the trust, as to the share of his mother, and acted under it ; and that *Edwards*

*Johnson,* at the time of procuring the loan from the defendants, upon his notes indorsed by her, represented to the defendants, that she had received a large amount of property, under the will of her late husband. These facts furnish very satisfactory evidence of the assent of all parties to the provision made for her in the will.

It is also found, that there has been no division or distribution of the property. Nor was that necessary to the perfection of her title. Until that is done, the parties hold as joint tenants; and her undivided moiety in the joint property, is as much liable to be taken upon execution as any property which she might own in severalty. It is, therefore, unimportant to enquire, whether the property levied upon was owned by her in severalty, or jointly with all, or some part of the other owners. In either case, her interest may be taken; and we are not called upon, in the present suit, to determine the extent of that interest.

But suppose the plaintiffs have never parted with their legal title, and they still remain, in contemplation of law, the owners of the property levied upon, by the defendants; why have they not adequate remedy at law, in an action of trespass or trover? We see nothing to distinguish it, in that respect, from the ordinary case, where one person has unlawfully taken the goods of another, upon an execution against a third person. The remedy, in such case, for the party injured, is at law, and not in chancery.

2. Again, it is said, that the property *may* be needed, by the plaintiffs, for the payment of the debts of the deceased. But is it not averred in the bill, that it is *in fact* so needed; and the report of the committee shews the reverse. The inventory of the personal estate, as sworn to by one of the plaintiffs, exceeds the sum of 35,000 dollars, while all the debts and liabilities of the deceased are less than 20,000 dollars. One-half of the balance, even after deducting the debts due from the plaintiffs, is more than sufficient to satisfy all the executions in favour of the defendants.

But were it otherwise, the question again recurs, why sue in equity? It is not claimed, that the defendants are insolvent, and unable to respond in damages for all the property which they may illegally take and convert to their own use. The money collected in that form, for aught that appears,

*Fairfield,*
June, 1851.

Johnson
*v.*
The Connec-
ticut Bank.

may be equally as available for the payment of debts, as the property taken by the defendants.

3. It is stated in the bill, that if the property taken by the defendants, should not be wanted for the payment of the debts and liabilities of the deceased, yet it embraces family relics, gifts from deceased friends, family pictures, and other property of like description, of great interest and value to the plaintiffs, which they are exceedingly anxious to retain. It is unnecessary to enquire what might be done in relation to family pictures, possessing no intrinsic value, and of no use to any one, except the family relatives; because it does not appear from the report of the committee, that any such articles have been taken, by the defendants. The only articles falling within that description of property in the bill, which have been levied upon, are the ottomans, lamp, vases, and china tea set. Now, we know of no law exempting such property from execution, whether purchased by the debtor, or presented to her as family presents. Besides, these articles are presents to Mrs. *Johnson,* and yet she is no party to the present suit.

But there is still another fatal objection to the plaintiffs' claim upon this ground. They do not even offer to pay the value of the articles which they seek to protect. It may be unpleasant to them to have these articles sold upon execution; and it may be as unpleasant to the defendants to be defrauded of their debt. So it may be very painful to the feelings of a debtor, reduced to poverty, by misfortune, to have the family mansion, long occupied by him and his ancestors, taken from him, and himself and his family turned houseless upon the world; yet we know of no authority in a court of equity, to interfere and say, that the creditor shall not collect his debts.

4. Again, it is averred in the bill, that *if* she has any interest in the estate, which can be taken on execution, she has more than sufficient to pay all her debts, other than the property in question. If she has the means of paying the debts of the defendants, why does she not do it, and thereby exonerate the property which has been taken? There is no averment in the bill, nor claim made, that the defendants have ever refused payment, or endeavoured to do any thing more than is required to enforce payment.

But the plaintiffs do not even say, that she has any other property, which can be legally taken, by the defendants; or any other than that derived under the will from the estate of her late husband. To compel the defendants to relinquish the property which they have taken, because the title to it is defective, and resort to other property holden under a like defective title, would be absurd.

5. It is further said, that the property in question was given to *William S. Johnson, in trust* for his mother; and therefore, is not liable to be taken for the payment of her debts.

To this claim several answers may be given. In the first place, the property is not so given, as to place it beyond the reach of her creditors. He has but a *naked trust,* without any discretionary power as to the appropriation; and the mere circumstance that she has but an equitable interest, does not shew, that it may not be taken for her debts. It is the policy of our law, that *all* the property of a debtor should be responsible for his debts. And his equitable estate may be taken, as well as his legal, provided it is subject to his controll. *Davenport* v. *Lacon* & al. 17 *Conn. R.* 278. Again, if the legal rights of the trustee have been invaded, he has adequate remedy at law. And finally, what right has *Edwards Johnson,* one of the plaintiffs, to sue for property given to his brother, in trust for his mother? He is not a trustee, and has no interest, either legal or equitable, by reason of the trust.

The claim set up, that she has no interest in the estate of her late husband, which can be taken, to satisfy her debts, comes with a peculiarly ill grace from him, when it appears, that these debts, which the defendants are now endeavouring to collect, were by her contracted, solely for his use and benefit; and the defendants were induced to part with their money, relying upon his representations that she was abundantly responsible for all her debts, by reason of a large amount of property given to her, by the will of her late husband.

Finally, it is alleged in the bill, that the defendants threaten, and are about to levy a part of their executions upon the real estate of the deceased; and that such levy would not only be illegal, but would greatly embarrass the

*Fairfield,*
*June, 1851.*

First Baptist
Church in
Stamford
*v.*
Rouse.

settlement of the estate ; and therefore, they pray that the defendants may be enjoined against farther intermeddling with the estate.

The claim in relation to the embarrassment, if well founded, would be entitled to but little favour, since the time limited for the settlement of the estate, has long since expired ; and no disposition is manifested, by the plaintiffs, to complete the final settlement, during the life of their mother. To interfere, in the manner claimed, would enable them, by their delay, effectually to shield the property of their mother from the claims of her creditors.

But further : we are unable to see in what manner the levy of an execution upon her life-estate in the realty, can affect their proceedings in relation to the settlement of the estate, so far as the personalty is concerned.   If, as they claim, she has no interest which can be legally taken, it furnishes no ground for the interference of a court of equity, by way of injunction.   The proper place for the trial of the validity of a title, by virtue of the levy of an execution, is in an action of ejectment.

Other objections have been urged, on the part of the defendants, as to the form of the bill ; but we deem it unnecessary to consider them ; and we advise the superior court to dismiss the bill.

In this opinion the other Judges concurred.

Bill dismissed.