## Illinois Central Railroad Company, et al. v. Meacham Contracting Company, et al.

(Decided May 7, 1918.)

### Appeal from Christian Circuit Court.

1. Covenants—Covenants Running with the Land—Construction of. —Where a city by an ordinance contract permitted a railroad to lay its tracks in the city in consideration of the doing of certain improvements by the company, and the ordinance further provided that the company should provide and maintain suitable means for draining water under its tracks, and upon its failure

to do so, the city should have the right to compel performance, these conditions were covenants running with the land, and the purchasers and lessees of the company were bound by the terms of the contract.

2. Covenants—Covenants Running with Land—Remedies for Enforcement of.—Where a railroad company, in consideration of its right to enter a city, agreed to make such drainage improvements as might be necessary, the city, upon its failure to do so, had the right to have the improvements made at the cost of the railroad company.

3. Railroads—Liability of Purchaser and Lessee of to Perform Conditions in Contract with Original Railroad.—Where a railroad company obtained the right to enter a city under an ordinance contract, the purchaser of the road and a lessee of the purchaser, were bound to perform the conditions imposed by the ordinance to the same extent as the company with whom the contract was made.

4. Railroads—Liability for Improvements Under Ordinance Contract with City.—Right of City to Determine Necessity for Improvements.—Where a railroad company in consideration of the right to enter a city agreed to make such drainage improvements as might be necessary, the city in the exercise of a reasonable discretion had the right to prescribe the character of the improvements.

5. Railroads—Remedies of Contractor and City to Recover Cost of Improvements That a Railroad Should Have Made.—Where a railroad company failed to make certain improvements in a city that it bound itself to make, the city had the right to have the improvements made by a contractor and to join with the contractor in a suit to recover from the railroad company, for his benefit, the cost of the improvements.

TRIMBLE & BELL, BLEWETT LEE and TRABUE, DOOLAN & COX for appellants.

J. W. DOWNER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the Meacham Contracting Company and the city of Hopkinsville suing for the use and benefit of the contracting company, against the Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company to recover $1,-425.95 with interest from December 20, 1912, on account of the construction of a sewer in the city of Hopkinsville for which the city and the contracting company sought to make the railroad companies liable. The lower court gave judgment against the railroad companies for the full amount claimed and they prosecute this appeal.

The litigation grows out of the following facts: In 1891 the Ohio Valley Railway Co. obtained from the city of Hopkinsville the right to enter the city with its tracks. This privilege was granted by an ordinance of the city providing in section 1: "That permission is hereby granted to the Ohio Valley Railroad Company to make its roadbed, construct and maintain its railway and lay its tracks, its sidetracks and switches within the limits of the city of Hopkinsville, from the city limits on the west or southwest and along or near to the south and east bank of the west or Town Fork of Little River, and across the following named streets or passways, viz: Twelfth, Eleventh, Tenth, Ninth and Eighth streets; and on, over and across the lot of ground belonging to the city of Hopkinsville, and designated as the "Rock Spring Lot" which is bounded on the north by Eighth street, on the east by Water street, on the south by Ninth street and on the west by the River to the lot of ground on the south side of Seventh street, and on the west side of Water street, adjacent to the stone bridge on said street, where it is proposed that the terminus of the said railway in the said city shall be; and in consideration of the establishing of the depots or stations of said railway in said city at some point or points between 7th and 10th streets and west of Water street the right to the perpetual use and occupation of the "Rock Spring Lot" is hereby given and granted to and vested in said company, for its roadbed, main track, sidetracks, switches and for any buildings or structures, that may be needed by said railway company, for its business and traffic." It was further provided that that part of Water street betwen Seventh and Ninth streets should be widened and macadamized by the railway company; that the company should keep "Rock Spring" open and unobstructed for the use of the public; and that all fills, embankments and other improvements or structures necessary to the use and enjoyment of the Rock Spring lot should be made by the company at its own expense. And it was further provided in the fifth section of the ordinance: "That said Ohio Valley Railway Company shall, under the direction of the Board of Councilmen of the city of Hopkinsville, complete the covered sewer on 9th street and from its present western terminus to some point beyond its tracks and sidetracks that may be laid across 9th street, so that there shall be an unobstructed flow from said sewer to

the river; and said company shall likewise provide and maintain suitable means of draining water and for the passage of water under its tracks, where they shall cross the streets herein named; and upon the failure of the said company to do so, the Board of Councilmen shall have the right to compel said company to comply with the requirements.''

After the passage of this ordinance the railway built its line of railroad into Hopkinsville and proceeded to and did comply with all the conditions of the ordinance that were presently to be performed and operated its road until 1897, when all of its properties were sold at a public sale under order of court and conveyed to the appellee, Chicago, St. Louis & New Orleans Railroad Co., which it appears is now the owner of the Ohio Valley Railway Co. and all of its rights, privileges and franchises. This railroad company operated the road for a short time and then leased it and all that it had purchased to the Illinois Central Railroad Co. for ninetynine years, and this railroad company, under this lease, has been operating the road constructed by the Ohio Valley Railway Co since 1898, and has been in the control and possession of all the rights, privileges and franchises secured from the city of Hopkinsville by the Ohio Valley Company.

In 1911 the city of Hopkinsville adopted an ordinance providing for the construction of a sewer beginning at the corner of Eleventh and Virginia streets and extending to the corner of Tenth street, and thence down Tenth street to the river a distance of 980 feet. This ordinance, after setting out section 5 of the ordinance by which the Ohio Valley Railway Co. secured permission to come into the city, recited that the Illinois Central Railroad Co. should construct:

''At its expense so much of the sewer as was west of Water street, or about 225 feet, assuming to charge the railroad company with the construction of this sewer under and by virtue of section 5 before mentioned.''

This ordinance further provided that: ''In the event said Illinois Central Railroad Co. fails and refuses to pay the contract price for that portion of the said proposed sewer for which it is liable, or refuses to give free and willing consent for same to be constructed under its property west of Water street, where Tenth street formerly extended to the river, then the city of Hopkinsville,

through its executive, legislative and legal departments, shall take whatever steps that may be necessary to compel said railroad to comply with the conditions of said grant, franchise, or permit, and condemn a right-of-way under and through the railroad property for said sewerage purposes."

After this and upon the refusal of the railroad companies to make any part of the improvement the city made a contract with the Meacham Contracting Co. to construct this sewer, and in this contract it was stipulated that: "In estimating the final cost for this work at the above unit prices, it is agreed that the city of Hopkinsville shall pay $3,000 in cash or its proportion of the work to Water street and shall give as additional consideration an apportionment claim against the Illinois Central Railroad Company for said railroad proportion of the cost for 240 feet more or less beyond Water street in accordance with the engineer's estimate based on the unit prices, as required by ordinance No. 74, approved October 24, 1911. Should the cost of the sewer upon final estimate exceed the $3,000 appropriated by the city and the amount apportioned against and paid by the Illinois Railroad Company, the excess shall be paid by voluntary subscriptions of those benefited by the sewer, or by appropriations."

After this the sewer was constructed by the Meacham Contracting Co., and accepted by the city, which paid to the construction company so much of the cost of the sewer as it agreed in the contract to pay, and gave to the construction company a warrant against the Illinois Central Railroad Company for $1,425.95, the amount of the contract price for the work done west of Water street and under the property of the railroad company that the city contended should be paid for by the railroad company. The railroad company refused to pay any part of this amount and as the result this suit was brought.

We may here say that no question of moment is made as to the power of the city of Hopkinsville to order the construction of this sewer or that it was constructed in accordance with the ordinance and contract thereunder, or that it was accepted by the city; so that the only question in the case is should the railroad companies be required to pay for so much of the construction as they were held liable for in the judgment appealed from? It may further be here said that liability is sought to be

fixed on the railroad companies by virtue of the covenant in the ordinance under which the Ohio Valley Company secured admittance into the city and especially section 5 of this ordinance.

For the railroad companies, it is contended: (1) that section 5 of the Ohio Valley Railway Company ordinance did not give the city authority to construct, at the expense of that railway company or its successors in title, the sewer for the cost of which the present railroad companies have been held liable; (2) that if the city of Hopkinsville had any right—which is denied—to enforce the payment of this demand, it could not assign its right to the Meacham Contracting Co., or confer upon it authority to bring this suit, or join with it in bringing this suit; (3) that in no state of case can the Illinois Central Railroad Company, which is merely a lessee, be made liable for the cost of the construction of this sewer.

For the city and the Meacham Construction Co., the argument is made that the covenants in the Ohio Valley ordinance, and especially in section 5 thereof, were covenants running with the land and broad enough to confer on the city power to construct the sewer in question at the expense of the Ohio Valley Railway Co.; that the Chicago, St. Louis & New Orleans Railroad Company, as the successor in title of the Ohio Valley Railway Company, and the Illinois Central Railroad Company as the lessee for 99 years, are chargeable with everything that the Ohio Valley Railway Company could have been charged with under the ordinance, as the covenants, in the ordinance, ran with the land and were binding upon all persons who succeeded to the title and privileges of the Ohio Valley Railway Company, either as purchaser or lessee; that the city of Hopkinsville had the right, by an ordinance which was duly adopted, to assign all of its rights, for the collection of the amount due by the railroad companies, to the Meacham Construction Company and to join with the construction company in the prosecution of this suit for the benefit of the construction company.

We have no doubt that the conditions in the ordinance by which the Ohio Valley Railway Co. secured permission to come into the city are binding upon its successors in title, as well as its successors in the use and enjoyment of the privileges that were granted by the ordinance to the Ohio Valley Railway Company. In

other words, the conditions in this contract ordinance were what may be called covenants running with the land and binding to the same extent upon the successors of the Ohio Valley Railway Company as they were binding upon it. Kentucky Central Railroad Company v. Kenney, 82 Ky. 154; Flege v. Covington Bridge Company, 122 Ky. 348. It would be idle to say that the conditions in this contract ordinance were personal to the Ohio Valley Railway Company or that they only imposed obligations and burdens upon it, or that if it saw proper to sell or lease, as it had the right to do, its railroad and all the privileges and rights belonging thereto, that the purchaser or lessee would be exempt from all the obligations and burdens of this ordinance. Accordingly, in our opinion, the Chicago, St. Louis & New Orleans Railroad Company and its lessee, the Illinois Central Railroad Company, stand in the same place as the Ohio Valley Company, and whatever the city could require the Ohio Valley Company to do, it can require these companies to do.

Having these views, the first and really the principal question in this case is the proper construction and effect of the fifth section in the Ohio Valley Railway Co. ordinance, and the liabilities, rights and remedies arising thereunder. In this fifth section it was stipulated that the Ohio Valley Railway Company should do certain specified things—which it did do—and then a general clause providing for conditions that might arise in the future was inserted, and under this clause the railway company obligated itself to provide and maintain suitable means for draining water under its tracks and if it failed to do this, then the city was given the right to compel it to perform the conditions. This is the only construction the ordinance is fairly susceptible of. It is suggested that as this ordinance was adopted in 1891 and the sewer, that is the basis of this litigation, was not ordered to be constructed until 1911, the right of the city to construct, at the expense of the railroad companies, or to compel the railroad companies to construct, a suitable sewer was barred by limitation, but, plainly, there is no merit in this contention. This provision in the ordinance was intended to meet, as we have said, conditions that might come up in the future, and whenever the conditions arose that made it necessary to provide other means of draining the water it was the duty of the railroad companies to provide suitable means for this pur-

pose, and the city, under this section, was left to be the judge of when other suitable means of drainage were needed. This question was not left to the discretion of the railroad companies, but to the discretion of the Board of Councilmen, because the section provides that upon failure of the railway company to provide suitable means of drainage, the Board of Councilmen should have the right to compel the company to do so.

Now, of course, the discretion thus lodged in the Board of Councilmen could not be exercised in an arbitrary or frivolous way, and there is no claim made in this case that it was. It appears that the Board of Councilmen, in the exercise of a reasonable discretion, decided that the construction of this sewer was necessary and proceeded to construct it, or have it done, and when constructed it was regularly and duly accepted by the council.

The question is raised as to the remedy of the city in the event the railroad companies refused to provide suitable means of draining water under their tracks, and it is said that the remedies were a suit in a specific performance to compel the railroad companies to construct a sewer, or an action in damages for their failure to do so. In the case of Chicago-Memphis & Gulf Railroad Co. v. Dodds & Johnson, 167 Ky. 624, a case involving the remedies of the complaining party, where there was a breach of covenants running with the land, the court said, as applicable to the facts of that case, that there might be an action for specific performance or to recover damages for the injury to the land, or for an injury to the crops growing on the land. But we do not think that a city, in a case like this, should be limited to those remedies, although it might bring a suit for specific performance, or a suit for damages for a breach of the covenants. Where a city enters into a contract with a railroad company, as in this case, under which the railroad company agrees to make certain improvements that are essential to the welfare of the people of the city, and it fails to perform its contract, the city may, where it is given the power to compel the performance of the conditions of the contract, demand that the covenantor shall perform the conditions in such reasonable manner as may be prescribed by it, and upon its failure to do so it may perform them itself and recover from it the reasonable cost of the performance. Manifestly, a suit for

damages for a breach of the covenants would be wholly inadequate to secure the benefits the contract was designed to promote.

In this case, the railroad companies denied they were under any duty to make this improvement and refused to have anything to do with it. Under these circumstances we have no doubt that the city, under its contract authority to compel performance, had the right to make the improvement and charge the railroad companies with the cost thereof. This was the only adequate remedy the city had to enforce performance of the conditions in the contract and no question seems to be raised as to the sufficiency of the work or the reasonableness of the price.

Of course, the city could not do the work itself; it was necessary that it should let the contract to some other party, and it did let the contract to the Meacham Contracting Co., for the construction of the sewer, a large part of the cost of which the city had to pay because the greater part of the sewer was constructed under land not owned or occupied by the railroad companies, and so the contract between the city and the contractor provided that it should pay for that part of the sewer not on the property of the railroad companies, and further provided that the railroad companies should pay the cost of so much of the sewer as was constructed under their property, and when the work had been completed and it was ascertained how much of the cost should be apportioned to the railroad companies, the city assigned to the contractor that part of the claim for which the railroad companies were liable, and by a resolution gave to the contractor the right to use its name in the collection of the amount due by the railroad companies.

A good deal is said on the subject of this assignment, and the right of the city to join in the suit, and the right of the contractor to maintain it, but there is no substance whatever in these objections, which are purely technical. If, as we have determined, the city had the right to construct the sewer under the property of the railroad companies and charge them with the costs thereof, it is hardly worth while taking up time discussing the right of the city to assist the contractor in collecting from the railroad companies the amount chargeable to them, the correctness of which is not disputed. The railroad companies were in no manner prejudiced by the

judgment obtained by the city suing in connection with the contractor, because, at last, this judgment only requires the railroad companies to do that which they were under a duty to do, and they are fully protected from future suits by the contractor or city growing out of the construction of this improvement.

Quite a number of interesting technical questions are raised by counsel, but this court has long since abandoned the practice of permitting purely technical objections to interfere with the correct course of justice, and when a party ,having a meritorious claim, is obliged to go into the courts for the purpose of collecting it, something more substantial than mere legal technicalities must be relied on to defeat it.

The judgment is affirmed.