## Wooten's Trustee v. Hardy, et al.

(Decided October 11, 1927.)

### Appeal from Christian Circuit Court.

1. Wills.—Insurance on life of testator, wherein his daughter was made beneficiary, constituted no part of testator's estate, and he had no legal right to dispose thereof.

2. Wills.—Where testator included in a devise of property to his daughter and to contingent remainderman life insurance money, which he had no legal right to devise in that daughter was made beneficiary therein, such part of the gift would be invalid and not binding on daughter but she could not accept property rightfully devised and deny testator's right to limit insurance money over to contingent remainderman, necessitating an election either to accept will in its entirety or retain insurance to which she was rightfully entitled, and forfeited all rights under will.

3. Wills.—Will, establishing a trust of all testator's property, including insurance money wherein daughter was beneficiary with provision for expending income for daughter's education and maintenance and certain contingent remainder over, held to establish testator's intention to bequeath such insurance money with sufficient clearness to require an election by devisee whether she would accept terms of will.

4. Wills.—An adult is not required to elect as to whether he will accept provisions of will until he has notice of a conflict of his interests and is advised as to rights thereunder.

5. Guardian and Ward.—Guardian's construction of will as bequeathing insurance in which ward was beneficiary and paying proceeds thereof to trustee under will held not binding on ward as an election to accept terms of will, since right of election is personal and cannot be exercised by guardian, trustee, or personal representative.

6. Wills.—Acts of minor before and after reaching majority held sufficient to show assent to terms of father's will bequeathing insurance money wherein she was beneficiary and to imply an election to accept terms of will, whereby she received income from trust fund during her life with certain contingent remainder over.

7. Trusts.—Under will establishing trust, income of which was to be used for daughter's maintenance and education with right to use principal if necessary, trustee was authorized after her death to pay claims for maintenance and education, together with expenses during last illness and burial expenses.

8. Wills.—In construction of wills or similar instruments, the word "relatives" is limited by confining it to next of kin who would take under statute of descent and distribution.

9. Wills.—Where will provided that residuary estate should be apportioned among surviving relatives, persons that would have inherited estate of testator if he had died intestate take as devisees under the will.

10. Wills.—Manner or character of apportionment among devisees is governed by intent of testator as expressed in the will.

11. Wills.—A provision in will for division among a class of persons equally, share and share alike, or where words of similar import are used, means a per capita and not a per stirpes division, unless a different intent is discoverable from the will itself.

12. Wills.—Under will devising residue to relatives in equal proportions, distributees held to take per capita, and not per stirpes; there being no different intent discoverable from will.

WHITE & CLARK for appellant.

H. W. LINTON, FRANK RIVES, guardian ad litem, and J. C. FLEMING warning order attorney for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

R. S. Wooten, a widower, died testate in December, 1920, survived by an only daughter, Esther, then 16 years of age, and leaving an estate valued at about $60,-000; he also carried $11,000 insurance on his life in which Esther was the beneficiary. His will, in his own hand-

writing, dated October 5, 1920, was duly probated in the Christian county court, the county of his residence. The will, to be more elaborately treated hereafter, provided for the sale of his property, the collection of the insurance money, and the creation of a trust fund; that Esther's maintenance and education should be limited to the income from this fund, except in the case of certain contingencies and an installment distribution of the trust estate to Esther beginning when she arrived at the age of 25 years, with a limitation over in the event she died without issue. His estate was converted into interest-bearing securities. The guardian of Esther collected the insurance policies, and the proceeds of these, together with all the funds arising from testator's estate, were turned over to the trustee named in the will, who managed and controlled same in accordance with its provisions.

Esther was unusually intelligent and industrious, was given a liberal education by the trustee, and developed into woman of rare charm. She lived with her aunt in Tennessee, and after her graduation became engaged to be married, but in the spring of 1925 developed tuberculosis and later contracted pneumonia from which she died in September of that year, at the age of 21 years and 8 months. She also left a will which was duly probated at that place. The expenditures for her maintenance and education exceeded the income of the trust estate and encroached upon the principal to the extent of over $1,600. During her last illness heavy bills were incurred for medical advice and attention, and in addition she was buried in a manner befitting her station in life, all entailing considerable additional expense. After her death questions arose (1) as to whether the proceeds of the insurance policies were devised to her by her father, or belonged to her independent of the will; (2) as to whether the expenses alluded to should be paid out of the corpus of the trust fund; (3) to whom and in what proportion the residuum of the trust estate passed upon the death of Esther. To determine these questions the trustee under the will of R. S. Wooten filed suit in the Christian circuit court setting up his construction of the will. The executor of the will of Esther Wooten and the heirs at law answered setting up their respective contentions. The judgment of the court upheld the contentions of Esther's executor, who will be referred to herein as

appellee. The trustee under the will of R. S. Wooten appeals and will be referred to as the appellant. Reference will be made to the judgment in connection with our conclusions.

The pertinent provisions of the will of R. S. Wooten being:

Paragraph 2. "I give and bequeath to my daughter, Esther Morrison Wooten, all my property, real personal and mixed, after the payment of my debts, funeral expenses, etc., and the exceptions hereafter."

Par. 3. "It is my will and I direct that all my property—real and personal—be sold and converted into money as soon as possible and practicable and that it be paid to my daughter's trustee hereinafter named, except such notes, bonds and stocks I may own at my death not due, and that my daughter's trustee shall say are good and safe investments, all these and my life insurance policies, I will and direct shall be turned over to my daughter's trustee at once, who shall invest and keep invested all moneys in interest bearing and safe bonds, the interest to be used for my daughter's support and maintenance, or enough of it to enable her to live as her circumstances and position in life will justify and to afford her a good education; provided that the principal is not to be encroached upon unless in the judgment of her trustee it becomes urgent for her proper support and education. However, I do not contemplate such emergency, as I think the income from my estate will be ample, and indeed more than sufficient for my child's support and education."

Par. 8. "I nominate and appoint the City Bank & Trust Company, of Hopkinsville, Christian County, Kentucky, as Trustee for my daughter Esther M. Wooten, and it is my will that after paying cost of administration, the said Lacy, Elliott Williams and Barksdale, shall pay over all moneys belonging to my estate, to the said Trust Company, Trustee for the benefit of my said daughter."

Par. 9. "As my said daughter, like most young people is not likely to be well matured or settled by the time she reaches majority, it is my will that her said trustee postpone making settlement with her

until she reaches twenty-five years of age, if she so long live. I direct that one-fifth of the whole of said principal be paid over to my daughter annually until she is thirty years of age, if she so long live; then I direct said trustee to pay over to her absolutely the whole of said principal sum together with any increment thereon. Provided, however that should my daughter in the meantime marry a practical frugal and industrious man, said trustee may in its discretion advance my daughter money to purchase her a home and for such other purpose as may be necessary to begin her married life comfortably, but in this would urge said trustee to be very judicious and circumspect.''

Par. 12. ''Should my daughter, Esther M. Wooten die without issue, it is my desire, and I so will, that all money held by my trustee from my estate and all that she may leave at her death that she has received from my estate shall be distributed as follows: I will that One Thousand Dollars be paid to Mrs. J. L. Ashbrook, Tampa, Florida, and Five Hundred Dollars to Mrs. E. R. Overby now in Tennessee. Then I will that my daughter be allowed to fix an amount if she so elects to be given to whomsoever may stand in the attitude of father or mother or both to her and for her; then should there be a residue amount remaining I will that One Thousand Dollars be paid to the President of the Bank of LaFayette, Kentucky and it be expended in improving and beautifying Powell Cemetery, near LaFayette, Kentucky, and Five Thousand Dollars paid over to the said President of said Bank and he be authorized to invest in safe long-term bonds and the interest therefrom he shall use in having my lot in the said Powell Cemetery cared for and kept in good condition, reserving sufficient amount to pay himself, and the residue of said interest to be used for keeping up the entire cemetery. I will and bequeath Five Thousand Dollars to the Methodist Church of LaFayette, Kentucky, following bequest above to Powell Cemetery the Trustees of said church are requested to invest and keep invested the said amount in safe long-term bonds and use the interest only therefrom for the use and benefit of said Church. Then I will and bequeath one thousand

dollars to be used in placing a memorial window in the name of my dear beloved and departed wife, Esther Wooten in the Methodist Church at La-Fayette, Kentucky. Then to my surviving relatives sharing equally in all remaining moneys if should be any—with one exception—if S. F. Wooten survives or lives at the time, he be given four times the amount of any one relative; or should he be taken from life unto death before this time arrives any remaining member or members of his family shall receive his share."

While the will of Esther Wooten is not before the court for construction it is made a part of the record as illustrating her attitude toward her father's will. The first clause reading:

"I will that after one thousand dollars has been paid to Mrs. J. H. Ashbrook of Tampa, Florida, and Five Hundred Dollars to Mrs. E. R. Overby, now of Huntington, Tennessee, as was directed in the will of my father, that Five Thousand Dollars be paid to Mrs. W. W. Barksdale of Clarksville, Tennessee, who has been a mother and ever willing advisor of mine since my father's death. I also will to Mrs. Barksdale, my aunt, all my furniture, one fur coat and my wardrobe trunk. . . ."

(1) The first question to be determined is whether the insurance money passed under the will of R. S. Wooten. Obviously it was no part of his estate and he had no legal right to dispose of it. If included in the devise of his property to his daughter and to the contingent remainderman, this part of the gift would be invalid and not binding on her, but she could not accept the property he rightfully devised her and deny his right to limit the insurance money over to a contingent remainderman; and under such circumstances, unless some reason existed excusing her from making an election, she was required either to accept the will in its entirety or to retain her own property and forfeit all rights under the will. See Morrison v. Fletcher, 119 Ky. 488, 84 S. W. 548, 27 Ky. Law Rep. 124; Gore v. Stephens, 1 Dana 203, 25 Am. Dec. 141; Dickson v. Dickson, 180 Ky. 432, 202 S. W. 891, L. R. A. 1918F, 765; Huhlein v. Huhlein, 87 Ky. 247, 8 S. W. 260, 10 Ky. Law Rep. 107; Bonnie's Guar-

dian v. Haldeman, 102 S. W. 308, 31 Ky. Law Rep. 522; Edmonds, etc., v. Edmonds' Devisees, 102 S. W. 311, 31 Ky. Rep. 396.

This principal is conceded but appellee argues that, as R. S. Wooten was passionately devoted to his daughter, he could have no desire to divert her individual estate to distant and unknown collaterals; that by the use of the words "my estate" in the 12th paragraph of the will he referred to his individual estate and did not mean to include the insurance moneys in the limitation over; that Esther was not required to make an election because if he intended to devise the insurance this intention was not brought home to her and for the further reason that she was the sole object of her father's bounty; and that the facts do not show an election on her part. Considering these questions, it will be observed that the gift in the second clause is subject to the other "exceptions" in the will, and is not to take effect until they are performed. Evidently the "exceptions" refer to the creation and disposition of the trust fund for which provision is made in other paragraphs. The testator had no insurance policies save those involved in this action. By the third paragraph of the will all of the insurance money, together with all the proceeds of his other property, passed to the trustee for his daughter. This entire fund was to be invested by the trustee, which he appointed by another paragraph. Except in certain contingencies Esther was to receive only the income therefrom prior to the distribution period. If these contingencies arose, the "principal" might be encroached upon but he did not anticipate this, as he thought "the income from my estate . . . ample for her support and education;" his evident purpose being to create a trust estate for her benefit, and in the event of her death without issue, for the benefit of the contingent remaindermen for whom provision was made in paragraph 12. As she could only receive the income for many years, he distinguished it from the corpus of the estate by referring to the latter as "principal." The same thought is carried into the ninth paragraph, which postponed the distribution period until Esther became 25 years of age. She was then to receive one-fifth of the "principal" annually until all was consumed, and in the meantime was to receive the interest on the unpaid portion. In all this there is no intimation of a segregation of the insurance money, and the entire trust estate is treated as an aggregate. But he realized

that Ether might die without issue and in that event provided in the twelfth paragraph "that all money held by my trustee from my estate and all that she (Esther) may have at her death that she has received from my estate be distributed as follows," naming certain bequests and his surviving relatives. Here the trust estate is ended, and there is no necessity of longer distinguishing between "income" and "principal," and he used the words "my estate." The same words "my estate" were used in the concluding phrase of the third paragraph in referring to an encroachment on the corpus of the trust fund, where, beyond any doubt he was referring to the trust estate and where they were unquestionably used interchangeably with the word "principal." Also in the twelfth paragraph the words "from my estate" are preceded by the words "my trustee," although in other places in the will the words "my daughter's trustee" are used. Also in the third paragraph he refers to "my insurance policies." All of which shows that he did not place any special emphasis on the manner of use of these words. No doubt testator was a fond parent and was endeavoring to protect his daughter in the disposition of his estate. But it is equally clear that he intended that in the event of her death without issue that the entire trust fund should go to his branch of the family, even to the exclusion of her husband if she married. It is likely that he had paid the premiums and carried the insurance policies and thought he had a right to control their disposition. If he did not so think it is apparent that he considered the gift of his large estate to his daughter, subject to the contingencies named, a sufficient consideration for the devise of the insurance money to the contingent remainderman. At any rate, construing the instrument in its ordinary sense and giving effect to all its parts, it was the clear intention of the testator to bequeath the insurance money, and a critical analysis will not change this construction. And this was expressed with sufficient clearness to require an election by Esther. Nor did the fact that Esther was the sole object of her father's bounty relieve her from the burden of election. Bonnie v. Haldeman, supra. As to whether Esther knowingly elected to accept the provisions of the will is in dispute. While an infant cannot make a binding election he may do this at any time after obtaining his majority. Yet an adult is not required to elect until he has notice of a conflict of his

interests and is advised as to his rights thereunder. Moorman v. Louisville Trust Co., 181 Ky. 566, 205 S. W. 564; Story's Eq. Jurisprudence (2d Ed.) section 1097; 40 Cyc. 1977. Here the guardian, acting on legal advice, construed the will as bequeathing the insurance and collected the policies and paid the proceeds to the trustee. While this was not binding on Esther (see authorities, infra), it is permissible to note that she received the income from the entire trust until her death and claimed no part of the insurance principal. She was well educated and her attorney says she was the most intelligent girl he ever met. Her will was written shortly before she attained her majority and was not changed thereafter. It is intelligently and carefully prepared. Her attorney, who prepared it, says that he had a copy of her father's will and that she frequently advised with him in reference to different phases of it; and her will shows that it was framed to conform to it. This evidence indicates that Esther understood the situation, was advised of her rights, and had determined to accept and follow the provisions of her father's will. But if we assume that she did not understand the nature of the insurance provision and the necessity of election, it is well settled that the right of election is personal and cannot be exercised by a guardian, trustee or personal representative. See Harding's Adm'r v. Harding's Ex'r, 140 Ky. 277, 130 S. W. 1098, Ann. Cas. 1912B, 526; Moorman, etc. v. Lou. Trust Co., supra, and notes to 17 L. R. A. 296; 35 L. R. A. (N. S.) 1210; 49 L. R. A. (N. S.) 1072-1108. The injustice of permitting a personal representative to elect is manifest from this record. Under the facts of this case, during the lifetime of Esther it was clearly to her interest to accept the provisions of the will. Since her death it is to the interest of the collateral kindred on her mother's side of the family to procure the insurance money. True it is held in a number of the authorities cited, supra, that where a person under a disability is under the necessity of an election, the court may exercise the power in his interest. But we have been cited to no case in which the court may do this for a person sui juris or for the estate of a deceased person. On the other hand, in a number of cases it has been held that the law will imply an election in instances such as this; that prima facie every estate given by will is supposed to be beneficial and that the devisee or legatee is presumed to assent to it until the contrary appears. Church v. Church, 80 Vt. 228, 67 A.

549; Tarr v. Robinson, 158 Pa. 62, 27 A. 859. Especially will this rule apply where the legacy is shown to be beneficial to the legatee or devisee. Johnson v. Conn. Bank, 21 Conn. 148. As above pointed out, the gift was clearly beneficial to Esther, and even if the facts do not show an actual election upon her part they are sufficient to show her assent and to imply such an election.

(2) Having reached the conclusion that the insurance passed under the will of R. S. Wooten, it is necessary to determine whether the trustee is authorized to pay the claims against her estate, aggregating $4,000, out of the corpus of the trust fund. As we have seen, these claims are partly for maintenance and education, partly for extraordinary expenses incurred during her last illness and partly for burial expenses. As to the first two items which were incurred before her death there can be no doubt of the trustee's right, even after her death, to pay such as were reasonable and proper, as the remaindermen only took the balance of the estate burdened with her maintenance and education, and the trustee in his discretion was authorized to pay these claims out of the corpus of the trust fund. Under the facts of this case it is also evident that the testator intended the burial expenses of his daughter to be embraced in her maintenance. Though the spirit departed, the sacred form remained; it was his daughter's body and he desired it properly maintained (interred). The language of the will is broad enough to embrace the expenses thereby incurred, and the trust estate was created as much for this as for "her maintenance" during life; in this respect being entirely dissimilar from a devise of a life estate with remainder over, where the entire estate passes at once upon the death of the first taker.

(3) There remain two questions to be determined: (a) What persons did the testator intend should take the residuary estate? (b) How did he intend for that estate to be apportioned among them; that is, did he intend for the devisees of a different degree of relationship to him to take per stirpes or per capita? The language of the will is, "then to my surviving relatives, sharing equally in all remaining monies, if should be any—with one exception—if S. F. Wooten survives or lives at the time, he be given four times the amount of any one relative; or, should he be taken from life unto death before this time arrives any remaining member or members of his family shall receive his share." Nothing else ap-

pears in the will that sheds any light on these words, and
they must be construed according to their own import.

As to question (a), the word "relatives" in its
popular sense embraces all, even the remotest kindred,
and is so indefinite it has been found necessary in the con-
struction of wills and similar instruments to limit it by
confining it to the "next of kin" who would take under
the statute of descent and distribution. It is thus defined
in Page on Wills (2d Ed.) section 906:

> "The popular meaning of the word 'relative' or
> 'relation' is that of all persons within any degree
> whatever of consanguinity or affinity. . . . When
> the word 'relations' is used in a will to denote classes
> of beneficiaries it is settled that the law imposes a
> technical meaning and not the popular one. The
> primary meaning of 'relatives' or 'relations' is such
> persons as would take under the statutes of descent
> and distribution if testator had died intestate."

Similar definitions may be found in 28 R. C. L. 256;
40 Cyc. 1458; 2 Jarman on Wills, sec. 666; 3 Bouvier's
Law Dictionary, p. 2862—the various texts being fully
supported by cases cited in the footnotes. This rule harks
back to the early English case of Hardwick v. Glynn, 1
Atk., 496; 27 English Reports, 299. In the last cited re-
port there is an elaborate footnote citing a long list of
English cases to the effect "that the word 'relations' or
'kindred' in a will without any specification of what rela-
tives or kindred are intended, denotes such only as are
within the statutes of descent and distribution; although
the shares of such must be regulated according to the
intent and construction of the will under which they
claim." In the light of these authorities and of the sound
reasoning upon which they are based, we conclude that
those persons who would have inherited the estate of R.
S. Wooten, if he had died intestate, take as devises under
the will.

(b) The statute of descent and distribution requires
a per stirpes distribution. But while it is an aid in deter-
mining who are the devises, the statute does not control
the manner or character of apportionment among them.
This is governed by the intent of the testator as expressed
in the will, and as to this there is little room for discus-
sion. It is a well-settled rule of construction in this state
that a provision in a will for a division among a class of

persons "equally," "share and share alike," or where words of similar import are used, means a per capita and not a per stirpes division unless a different intent is discoverable from the will itself. Rogers v. Burress, 199 Ky. 766, 251 S. W. 980, and numerous cases therein cited. Here a single class is designed—that is, testator's "surviving relatives"—all of these, with one exception, are to share equally, clearly meaning a per capita division. In the Rogers Case the provision was in these words:

> "In the event that Milford McNeeley should not be living and should have no children, then the remainder of my estate shall descend jointly and equally to my heirs and the heirs of my wife, Fannie Rogers."

McNeeley had no children, and both he and Mrs. Rogers predeceased testator. Mrs. Rogers' mother survived her. Testator had no children, but did have numerous relatives. In holding that all these parties took per capita, the court distinguished the various cases and said:

> "We are therefore clearly of the opinion that this will must be construed to order a per capita division among the members of a single class composed of the heirs of testator and his wife."

That case is directly in point, and, aside from being of controlling force here, is a clear enunciation of the law. It follows that the various distributees under the will take per capita, except S. F. Wooten will receive four times the amount awarded each of the other devisees.

The chancellor below was of the opinion that the insurance money was not embraced in the gift to the contingent remainderman and adjudged it to the executor of Esther. He was also of the opinion that the above-named expenses incurred for Esther's benefit before her death were properly payable by the trustee under the will of R. S. Wooten out of the corpus of the trust estate, but that her burial expenses could not be charged to the trustee or paid out of that fund. Otherwise his judgment seems to have been in harmony with the views expressed above. For these reasons the case is reversed, for proceedings in conformity with this opinion.