CHARLES G. ENDICOTT

*v.*

MORDECAI T. ENDICOTT et al.

1. A testator provided that his "entire estate be and remain as it now is, * * * including the furniture &c.," to be occupied by his wife during her lifetime, and he also gave her an annuity.  By the next section of the will, he provided that at her death his homestead, including the furniture &c., should be used by his three daughters while unmarried.— *Held*, that, obviously, the word "homestead" had been accidentally omitted from the gift to the wife; and that she is entitled to its use; that the term "furniture" embraces everything about the house that had been usually enjoyed therewith, and that the

gift to the wife was in lieu of dower, and that she was not entitled to the $200 exemption.

2. Besides the use of his homestead, furniture &c., he gave to three of his daughters the income of $5,000 for their support in keeping it, and when it (the homestead) should no longer be used by them, he gave the homestead " to such child or children at that time living, and their heirs and assigns forever."—*Held,* that the latter gift was a contingent legacy to all of testator's children, his sons as well as his daughters, who should be living when the daughters ceased to reside in the homestead; that the devise to the daughters required them to occupy the homestead themselves; that the gift of the $5,000 to them was not absolute, but the use of it synchronous with their occupation of the homestead, and so also as to their interest in the furniture.

Bill for construction of will &c. On final hearing on pleadings and stipulation of counsel.

*Mr. F. McGee,* for complainant.

*Mr. P. L. Voorhees,* for defendants.

THE CHANCELLOR.

Thomas D. Endicott, late of May's Landing, in Atlantic county, died May 28th, 1884. He left a widow, and four sons and five daughters. His personal estate was appraised at $31,826.29, and his real estate, including his homestead (valued at about $2,000), was of the value of about $6,000. The following are the parts of his will in respect to which a judicial construction and interpretation are sought:

" *Second.* It is my will, and I do order, that my entire estate be and remain the same as it now is, real, personal or mixed, including the furniture &c., to be occupied by my beloved wife, Ann Endicott, for and during her natural life. And I further order my executors, hereinafter named, to pay over to my beloved wife, Ann Endicott, the sum of $800 per year, for each and every year so long as she lives, out of the rents, interest, issues and profits thereof.

" *Third.* That at the decease of my beloved wife, Ann Endicott, the homestead whereon I now reside, including the furniture &c., to become and be used by my beloved daughters, viz., Catharine, Elizabeth and Hannah, as and for a home of and for all or either of them as may then be unmarried, or if either or any of them marry and become widowed whilst said homestead be used or occupied as aforesaid, then to be a home for either or any of them so bereft during such widowhood.

"*Fourth.* It is my will, and I do hereby order and direct my said executors, hereinafter named, to place the sum of $5,000 at interest, on some good security, and to pay the interest annually over to my beloved daughters, viz., Catharine, Elizabeth and Hannah, for their support and maintenance in keeping such home as aforesaid.

"*Fifth.* And when said homestead be no longer used or occupied as aforesaid by either or any of my beloved daughters above named, then I give and devise the same to such child or children at that time living and their heirs and assigns forever, and the representatives of any deceased child to have the share of his or her parent.

"*Sixth.* And my will is that any balance that may remain of the general income, rents, interest, issues and profits of my estate, not herein disposed of, it is my will the same be placed at interest on good security, or otherwise invested by my executors, as may seem to them safe and more advantageous to the estate and increase of the same.

"*Seventh.* But should both of my executors, hereinafter named, be removed by death, then the administrator *cum testamento annexo* to place said balance at interest on real security, and in no other way whatsoever invest the same."

The scheme of this will is to keep all the estate, except the homestead and furniture, invested during the life of the widow, and to pay her $800 a year, for life, out of the rents, interest and income, she to have the right to occupy the homestead and use the furniture for life. At her death the homestead and furniture are to be used as a home by Catharine, Elizabeth, and Hannah, if unmarried, and if any of them, having been married, shall become a widow during such occupation and use, such widow or widows is or are also to have the right to occupy the homestead and use the furniture with her or their sister or sisters. And in order to furnish the three daughters with the means of support there and keeping up the property and paying taxes upon it, $5,000 are to be invested at the testator's widow's death, and the interest is to be paid to them annually. The rest of the estate is to be kept well invested by the executors until such right of occupation shall be at an end, and then the homestead is to be divided among all of the testator's children who shall be then living and the heirs of any deceased child or children, such heirs taking *per stirpes* the share of the parent or parents. The property, other than the homestead and furniture and the $5,000, is to be divided among the testator's children at the death of the widow,

and the $5,000, when the daughters cease to occupy the homestead.

In the first sentence of the second section of the will the words " the homestead " have manifestly been omitted by mistake. The intention was, it is clear, to provide that the homestead (including the furniture &c.) should be occupied by the widow for life.

The term " furniture " embraces everything about the house that has been usually enjoyed therewith, including plate, linen, china and pictures. *2 Jarm. Wills (R. & T.) 352.*

The gift, in the third section, of the use of the homestead and furniture, is, as already indicated, for the purpose of providing a home for Catharine, Elizabeth and Hannah, if they should be unmarried at the widow's death, or for such of them as shall then be unmarried, and also for any or either of them, who, having married, shall have become widowed, or shall, during such occupation by the other or others of the three daughters, become widowed.

The fourth section provides that the executors shall invest $5,000 and pay the interest annually to Catharine, Elizabeth and Hannah, " for their support and maintenance in keeping such home as aforesaid." The expressed object of this provision shows that it was the intention of the testator that the gift should take effect when the use and enjoyment of the homestead and furniture by Catharine, Elizabeth and Hannah, or such of them as should be entitled thereto under the third section, should begin, and not before that time, and that it should cease when that use and enjoyment come to an end. The gift is expressly for the purpose of supporting and maintaining them in keeping the homestead as a home. It is insisted, on behalf of Catharine, Elizabeth and Hannah, that the gift is to take effect and the enjoyment to begin at the death of the testator, and that it is, in effect, an absolute gift of $5,000 to them, and that they are entitled to it now. But the expression of the purpose and object for which the interest of the fund is given is fatal to all of those propositions. To enable Catharine, Elizabeth and Hannah, or such of them as should have the use and enjoyment of the homestead, to pay taxes &c., during their occupation, after the

death of the widow, and to assist them in supporting themselves in the homestead the testator creates and places in the hands of trustees a fund, of which the interest alone is to go to those daughters while living there. The trust is not a simple trust, where the trustee is a mere passive depositary, but it is a special one, one in which the machinery of a trustee is introduced for the execution of a purpose particularly pointed out, and the trustee is called upon to exert himself in the execution of the settlor's intention. *Lewin on Trusts 21; Cooper* v. *Cooper, 9 Stew. Eq. 121.* To hand over to the *cestuis que trust* in this case the $5,000 would defeat the testator's purpose. To effectuate his intention the fund must be invested and the interest paid over annually. Again, it is urged that the gift of the income of the fund is unlimited, and that therefore Catharine, Elizabeth and Hannah are entitled to the fund itself. But, as has already been said, the gift is not unlimited, but is to terminate with the use and enjoyment of the homestead by the beneficiaries.

By the fifth section of the will, it is provided as follows :

" And when said homestead shall be no longer used or occupied as aforesaid by either or any of my beloved daughters above named, then I give and devise the same to such child or children at that time living, and their heirs and assigns forever ; and the representatives of any deceased child to have the share of his or her parent."

Catharine, Elizabeth and Hannah insist that the gift is to them, and that it is vested. The testator, by the expression "child or children," referred to all of his children, and the word "such" was not used in the sense of "said" or "before-mentioned," but with reference to the subsequent qualification of survivorship. What he meant was to give the property to those of his children who should be alive at the termination of the use and enjoyment of the homestead by Catharine, Elizabeth and Hannah, and the issue of those of his children who should then be dead, such issue to take *per stirpes*. Had he intended to give the property to Catharine, Elizabeth and Hannah alone, he would most probably have done so by devising it to them expressly, subject to their use and enjoyment of it as a home; and he would have

said "to such of my said three daughters" &c., and not "to such child or children" &c.  It is also urged that the remainder is vested; that, although it would otherwise he held to be contingent, the presence of the word "assigns" makes it a vested remainder. The gift is to those of the children who shall be alive at the time when the use and enjoyment by Catharine, Elizabeth and Hannah shall cease, and to the issue of those who shall then have died.  The words "and assigns" were used to indicate the absolute character of the estate—a fee—which the remaindermen are to take.  They have no significance beyond that.  *Wms. R. P. 121; Walton's Estate, 8 De G., M. & G. 173.*  They were entirely unnecessary.  The estate is a contingent estate.

By the sixth section, the testator directs that any balance that may remain of the general income, rents, interest and profits of his estate not previously disposed of in the will, be invested. The balance here mentioned, is that which will remain after payment of the annuity of $800 to the widow.  At her death, that annuity ceases, and then the $5,000 are to be invested, but all the rest of the estate except the homestead and furniture, will be at once distributable according to law.

Catharine, Elizabeth and Hannah insist that the gift of the use of the furniture to them is unlimited, and therefore absolute. The gift is not unlimited.  The bequest of the use of the furniture is expressly to provide a home for them in the homestead. If, at the death of the widow they be all dead or all married, the provision will not take effect at all.  Whenever their use of the homestead shall cease, their right to the furniture will be at an end.  The homestead and the furniture are given together for the same purpose.

The question is submitted to the decision of the court, whether the widow is not entitled to dower and to the $200 exemption. It is quite clear that both of those claims are inconsistent with the provisions of the will.  The testator orders that all his property of every kind shall remain as it is, that his widow shall have the use of the homestead and furniture for life, and an annuity of $800, also for life, out of the rents, interest, issues and profits of all the rest of his estate, and directs that the sur-

plus of interest &c. over her annuity, be invested for the benefit and increase of his estate. Besides the homestead, he owned real estate in Newton and real estate in Jersey City. The rents and profits of those properties are, by the will, with the rest of his estate except the homestead and furniture, charged with her annuity. She was put to her election between the provision made for her by the will and her dower. *Colgate* v. *Colgate, 8 C. E. Gr. 372.* The claim for the $200 exemption is, as will have been seen, in conflict with the provisions of the will. It therefore cannot be allowed. *Rev. 763 § 53.*

The question whether the right of occupation given to Catharine, Elizabeth and Hannah is personal or whether they may rent the property, is also presented for decision. Whether the donee of the use and occupancy of a house is confined to a personal use, so that he is debarred from letting the property during the continuance of his interest, is a question of intention. If it appears, from the terms of the gift or the context of the will, that a personal use only was intended, the enjoyment of the gift will be confined accordingly. *Ingersoll* v. *Ingersoll, 9 Stew. Eq. 127; Maclaren* v. *Stainton, 4 Jur.* (*N. S.*) *199; Stone* v. *Parker, 29 L. J.* (*Ch.*) *874; Kingman* v. *Kingman, 121 Mass. 249; Maeck* v. *Nason, 21 Vt. 115.* In *Ingersoll* v. *Ingersoll* the devise was of the privilege of occupying so much of the house in which the testator then lived as the donee might need during the time she should remain his widow. It was held that her use was to be personal. And it was so held in *Maeck* v. *Nason,* where the testator gave his daughter the right to live and remain in his house so long as she should remain unmarried. In the case under adjudication, the gift was expressly for a home for the donees. This implies a personal use. The three daughters, or such of them as shall use the homestead, will be liable to pay the taxes and to bear the other burdens which the law imposes upon life tenants of real property.

The widow, as life tenant of the homestead, is bound to pay taxes and to make repairs, but she is not bound to insure.