W.H. Penland died testate on July 30, 1920, naming C.L. Dooley as executor and testamentary trustee in his will. He had no children, or descendants of children, and was survived by his wife and a number of collateral kindred. His estate consisted of personal property, amounting to approximately $38,000, according to the final settlement of the executor.
In addition to specific bequests of money to his collateral kindred, the will contains the following clause:
"3rd. I will and bequeath to my wife, Mary E. Penland, in the event she survives me all my entire estate both real and personal, during her life time. However this bequest is made for her benefit and support and to be controlled and managed by my Executor whom I will hereafter appoint, and it is my will and desire that he act in the double capacity of executor and trustee, and request *Page 286 
that he take charge of said estate and to keep the funds and assets employed to the best advantage, and that he use the interest and other accumulations of said fund and as much of the principal as may be necessary to give my wife, Mary E. Penland, a decent and respectable support both in health and sickness. And in the event I should die without a home, I hereby empower my executor and trustee, if he deems it best to purchase a home or rent one for her as he deems best.
"And in the event he buys property I empower him to take title to same, and at the death of my wife sell said property and make title to same without resorting to the courts and proceeds administered along with the other funds for division."
Mary E. Penland, widow of W.H. Penland, died in January 1927, and thereafter this bill was filed by the executor against the heirs at law of W.H. Penland, for a construction of the will, and instructions as to the disposition of the remainder of the estate after the payment of the specific bequests, the will containing no residuary clause.
An answer and cross-bill was filed by certain of the heirs at law, averring that the income from the estate during the life of the widow was largely in excess of the amount necessary for the "decent and respectable support" of the widow, and seeking to charge the executor with such excess for the benefit of the heirs at law or next of kin of W.H. Penland.
No process was issued on the cross-bill, but an answer was filed thereto by the executor.
The cause was heard by the Chancellor upon the pleadings and an agreed statement of facts.
The agreed statement of facts contains the following: *Page 287 
"5th. That it was not necessary for Mary E. Penland to use all the interest and income earned by the estate of W.H. Penland after his death for her decent and respectable support both in health and sickness and that all of said interest and income while paid by the Executor to or for her use and benefit, or by her direction, by will or otherwise, was not in fact used by her for her support and maintenance."
The Chancellor decreed that the widow was given no right or interest in any part of the interest and accumulations arising from the estate during her life in excess of the amount necessary to provide her support; that the surplus or amount of the income not so used belongs to the estate, and should be accounted for as such by the executor and trustee to the heirs at law or next of kin of W.H. Penland; and that the executor and trustee should accordingly be held to account for all the residue of the interest and accumulations on the estate over and above the amount necessary to provide the "decent and respectable support" for the widow, Mary E. Penland, during her life.
The Chancellor then ordered a reference to the clerk and master to determine the total amount of interest and accumulations on the estate received by the executor and trustee; the amount disbursed by him for the support of the widow; and the net amount of such interest and accumulations, after crediting the proper disbursements, for which the trustee should be held to account to the heirs at law or next of kin.
No rules were ordered by the Chancellor for the guidance of the master in his determination of what kind and amount of disbursements should be considered as proper for the "decent and respectable support" of the widow. *Page 288 
From this decree the executor and trustee has prosecuted his appeal to this court, and, by his assignments of error, contends that by clause three of the will, hereinabove quoted, the widow was vested with a life estate in all of the property of W.H. Penland, and was entitled to the entire income from the estate accruing during her life, so that no part of such income became a part of the corpus of the estate to be distributed to the heirs at law of W.H. Penland upon the death of the widow.
The appellees, heirs at law, contending for the construction of the will made by the Chancellor, rely chiefly on Emert v.Blair, 121 Tenn. 240. In that case the devise to the widow of the testator was in the following words:
"In order to afford my wife, Mrs. Martha J. Emert, a comfortable and secure support during her life out of my estate, I hereby devise and bequeath to her, for the term of her natural life, all my property, real, personal and mixed, to have, manage and use for her support during said time."
The court found that the purpose of the testator to give his property to his wife for her support only, was "disclosed everywhere in the will," and that the devise to the wife was coupled with the limitation that she was to "manage it and use it for her support." The court therefore concluded that the widow held the property during her lifetime, in trust, "to have, manage and use for her support during her life;" that by accepting the benefits of the estate, the widow was constituted a trustee to secure for herself a comfortable support out of the estate, "and to preserve that portion of the estate which she did not require for herself for the heirs of John B. Emert." The court concluded its discussion in Emert v. Blair, as follows: *Page 289 
"It is true that under this will the amount required for the support of the widow is left entirely to her judgment and discretion, but after she has been provided a comfortable support, all that remains on hand at her death under the express terms of the will, passes to the remaindermen."
It appears from the opinion in the case cited that the widow had a separate estate of her own. No effort seems to have been made to hold her estate liable for any part of the income from the estate of her husband, which she might have expended for purposes other than her necessary support.
The present cause is unlike that of Emert v. Blair,
particularly in that the estate was not placed by the will under the control and management of the widow, but was placed under the control of the executor, as trustee, both for the widow as life tenant and the heirs at law as remaindermen. The analogy between the two cases would be more apparent, if the heirs at law inEmert v. Blair had undertaken to charge the estate of the life tenant with an excess of income expended by the life tenant for purposes other than her necessary support.
The first sentence of the third clause of the will under consideration, hereinabove quoted, is clearly sufficient, if standing alone, to vest the widow with a life estate in all the property of her deceased husband, and to the absolute title to the income accruing during her life. Vancil v. Evans,44 Tenn. 340, 345-346.
The inquiry here is, therefore, whether the subsequent portions of clause three of the will cut down or limit the life estate of the widow, as contended by the appellees.
The intention of the testator is expressed in the first part of the second sentence of clause three, by the words: *Page 290 
"However this bequest is made for her benefit and support." After vesting the control and management of his estate in the executor as trustee, the will directs the executor and trustee to "use the interest and other accumulations of said fund and as much of the principal as may be necessary to give my wife, Mary E. Penland, a decent and respectable support both in health and sickness."
The property which the executor and trustee is directed to use for the specific purpose is "the interest and other accumulations of said fund and as much of the principal as may be necessary." It will be noted that the limiting words "as much of . . . as may be necessary" do not precede the reference to the interest and other accumulations of the estate, but are so placed in the sentence as to limit and apply to the word "principal" only.
In this sentence the testator was authorizing the use by the executor and trustee of two funds, the principal of the estate on the one hand, and the interest and accumulations on the other hand. He directed that there should be used for the support of his wife "the" interest and other accumulations, and "so much of the principal as may be necessary." He did not direct the executor and trustee to use for the support of the widow only so much of the interest and accumulations as may be necessary.
The context requires that the definite article "the" be construed to mean "all of the." Words Phrases (Second Series), 893. That this expresses the intention of the testator is not only evidenced by the general language of the first sentence of the clause of the will under consideration, but by the fact that the words of limitation "as much as may be necessary" are so placed as to qualify only the use by the executor and trustee of the principal or corpus of the estate. This construction of the *Page 291 
word "the," as here used, is, we think, the natural meaning conveyed upon a reading of the sentence in which it is contained.
Appellees place some stress upon the second paragraph of the third clause of the will, wherein the testator directed that any property purchased by the executor and trustee should be sold upon the death of the widow, and the proceeds distributed with the other funds of the estate. This direction follows the direction that the executor and trustee might purchase a home for the widow in his discretion, and refers to such a purchase so authorized.
We think the testator had in mind that the executor and trustee would use a portion of the principal or corpus of the estate in making such a purchase, and this provision of the will has no reference to the income or accumulations from the estate during the widow's lifetime. The testator manifested a belief that the income might not even be sufficient for the support of the widow, by the direction that the principal might be used for that purpose, if necessary.
As we construe the will, therefore, the estate of the testator was vested in the executor and trustee, for the benefit and support of the widow during her lifetime, and the executor and trustee was directed to use all of the income and other accumulations, and as much of the principal as might be necessary, for her "decent and respectable support."
It is our opinion that such a testamentary trust is properly administered, in an estate of the size of the one involved herein, when the trustee pays over to the widow, as life tenant, being a person sui juris, all of the income or other accumulations accruing during her lifetime. *Page 292 
A contrary holding would impute to the testator an intention that the executor and trustee should supervise, and subject to his approval or disapproval, practically every expenditure which the widow might make or contemplate. We find no evidence in the will that the testator entertained such an intention. The agreed statement of facts describes him as a man of intelligence, successful in business, and a county official for a number of years. The will discloses no lack of confidence or affection on the part of the testator, and the trust was created primarily for the benefit of the widow. The trust was satisfied when the income and other accumulations from the estate were paid over by the trustee to the widow, and no duty devolved upon him to supervise her expenditures, unless, perhaps, it appeared to him that she was not receiving a "decent and respectable support."
The agreed statement of facts indicates, however, that some of the interest and income from the estate accruing prior to the death of the widow remained in the hands of the executor and trustee upon her death, and was paid out by him under the direction of her will.
Obviously, no part of the income remaining in the hands of the trustee upon the widow's death could have been used by him for her support, except to pay debts incurred by her, including the expenses of her last illness and funeral expenses. We think, therefore, the Chancellor rightfully held the executor and trustee accountable for so much of the income as may have been paid out by him after the death of the widow, except for the purposes indicated in the preceding sentence.
The Chancellor was in error in holding the trustee accountable for any part of the income or accumulations from the estate which he paid to or for the use and benefit *Page 293 
of the widow or by her direction, during her lifetime; or for such portion of the income or accumulations accruing during the lifetime of the widow which the trustee may have paid to satisfy her debts or funeral expenses.
The decree of the Chancellor will be modified as hereinabove indicated, and the cause will be remanded to the Chancery Court of Cocke County for further proceedings not inconsistent herewith. *Page 294