The administrator of the estate of Emma L. Newschwander, deceased, sues to recover a fund on deposit with the Howard Savings Institution of Newark. Miss Newschwander, who died February 5th, 1945, age sixty-eight years, had lived for thirty years with the defendants, her brother Albert and his wife. The account belonged to her and stood in her name until December 1st, 1941, when she requested the bank to "add the name of Albert Newschwander to my account No. 567501, making same payable to either or survivor." This was done. Early in the morning of September 26th, 1944, she suffered a stroke from which she never recovered. That same day, Albert caused the money on deposit, $3,500, to be transferred to an account in his sole name. Five weeks later, the name of his wife was added to the account. This is the fund in controversy.
The administrator objects that the defendants are incompetent to testify to conversations and transactions with deceased. Since enactment of the supplement, P.L. 1931 p. 474, such testimony has been received where the action is founded upon an allegation of fraud or breach of trust. R.S. 2:97-2. The bill of complaint alleges that Miss Newschwander had her brother's name added to the savings account, upon his agreement to act as trustee in respect to the account; that he was never owner, but was merely the agent, representative or trustee of decedent; that Albert's putting the money in his own name, and later in the names of himself and his wife, and his use of part of the fund for his own benefit, were violations and breaches of the trust. These charges bring the case within the operation of the supplement and enable the defendants to testify to conversations and transactions with the deceased.
The defendants, besides testifying themselves, called to the stand neighbors and old friends of Miss Newschwander who related what decedent had said on sundry occasions about the account. The conversations were not part of the res gestae, *Page 3 
but were received as admissions by decedent. Any statements by her that would be evidential against her were she still living and the complainant in the suit, are equally evidential against her administrator. Brice v. Atlantic Coast Railway Co.,102 N.J. Law 288; Wigm. Ev., § 1081.
In the attempt to show that decedent had no donative intent, complainant proved statements made by decedent, not in the presence of defendants. Two of these conversations occurred a month or two before she had Albert's name added to the account; one was nearly two years afterward. Generally, declarations of a deceased person, before or after, and not contemporaneous with, the alleged gift, are considered hearsay and unavailable to his representative in order to invalidate the transferee's title by showing the intent with which the act was done. Veader v.Veader, 89 N.J. Law 399. But such proof has been received in cases involving joint savings accounts or other joint estates.Skillman v. Wiegand, 54 N.J. Eq. 198; Dill v. Dill, 118 N.J. Eq. 374; 119 N.J. Eq. 467. Accordingly, I have given consideration to this evidence. The fact appears clear that Miss Newschwander and her brother Albert both intended that during her lifetime he should draw upon the fund only for her convenience and benefit, and that he should have for his own use whatever might remain in the account at her death.
Decedent and her brother went to the bank together to have his name put on the passbook. When this was accomplished and the attendant had returned the book to Miss Newschwander, she handed it to Albert; and when they reached home, he put the book where it had usually been kept, in his desk with her building and loan book and other papers, where it remained available to Miss Newschwander, as well as to her brother. Albert had for long taken care of her business with the bank and he continued to do so after he became her co-depositor. She made out and signed the withdrawal slips at home; Albert took them to the bank and got the money for her, $10 or $20 or so, generally once or twice a month. Until he drew out the entire fund, Albert signed only one withdrawal slip, June 7th, 1944, $25. From the time he transferred the account to his sole name until the death of Miss *Page 4 
Newschwander four months later, he drew $800. He testified that he used none of the money for himself, but applied all withdrawn for the benefit of his sister. The date of the last deposit was July 5th, 1940, more than a year before the account was made joint.
Miss Newschwander did everything that seemed to her necessary to carry into effect her intention in regard to the account; she put off nothing to some future date. If her acts were ineffectual to give an interest in the fund to Albert, it is because some law or policy of our state forbids such a gift as decedent attempted to make, or makes ineffective the method which she adopted. Complainant says first that the scheme was testamentary and contravenes our law of wills; second, that our law relating to gifts requires a donor to strip himself of all dominion or control over the subject-matter; that he cannot retain some interest himself, but must give all or nothing.
The fundamental principle is that there must be both an intention to make a gift and a carrying of the intention into effect, for the court will not enforce a non-executed intention or promise to give, since consideration is absent. In general, the execution of the gift, the transfer of title, occurs only upon actual delivery of the subject-matter of the gift and upon the donor's stripping himself of control and dominion. But this does not prevent a gift of a partial interest in property, real or personal, and a retention by the donor of an interest. In such case, the donor does not strip himself of control or dominion of the property to an extent that would nullify the right and title which he retains. He need only surrender control and dominion over the interest which he gives away. Dunn v. Houghton,51 Atl. Rep. 71; Schippers v. Kempkes, 67 Atl. Rep. 1042;affirmed, 72 N.J. Eq. 948; New Jersey Title Guaranty and TrustCo. v. Archibald, 90 N.J. Eq. 384; 91 N.J. Eq. 82; Kaufman v.Edwards, 92 N.J. Eq. 554; Commercial Trust Co. v. White,99 N.J. Eq. 119; 100 N.J. Eq. 561.
The question whether the scheme adopted by testatrix runs afoul of the statute of wills, has its source in Stevenson v. Earl,65 N.J. Eq. 721, and cases following it such as Taylor *Page 5 
v. Coriell, 66 N.J. Eq. 262, and McCullough v. Forrest,84 N.J. Eq. 101. However, the rule established by the later cases,New Jersey Title Guaranty and Trust Co. v. Archibald, supra, and Commercial Trust Co. v. White, supra, is that when the donor intends to, and does, transfer to the donee a present joint title to the account, the gift is good and is not testamentary, although the donor reserves the power to draw upon or even exhaust the account in his lifetime. But where no title presently passes and the donor's intention is that title shall pass at his death, the gift is incomplete, testamentary, and it fails. In the instant case, there is no satisfactory evidence except the form of the account itself by which to determine whether Miss Newschwander had the one intention or the other. Likely, she did not consider the subject. In the absence of proof to the contrary, the form of the account governs, for it shows not only what was done, but presumably what was intended. An account in two names, payable to either one or to the survivor, evidences a gift to take effect in praesenti. Commercial Trust Co. v.White, supra. Miss Newschwander and Albert were joint tenants or obligees, with the attendant right of survivorship, and each having power to draw. The only unusual feature is that Albert's title was burdened with a trust in favor of his sister so long as they both lived.
Steinmetz v. Steinmetz, 130 N.J. Eq. 176; Stout v.Sutphen, 132 N.J. Eq. 583, and Goc v. Goc, 133 N.J. Eq. 206;134 N.J. Eq. 61, hold that a joint tenant of a savings account who withdraws the entire fund in fraud of his co-tenant, becomes a trustee for his co-tenant as to one-half the fund and loses the right of survivorship. See note, 161 A.L.R. 71. In theSteinmetz Case, Vice-Chancellor Fielder found that one tenant "seized the entire joint funds in an inequitable attempt to deprive him (the other tenant) of all interests and rights therein." So in the other two cases, one joint tenant tried to defraud his fellow. While it is said that the joint estate is transformed into an estate in common, it is evident that equitable interests are referred to. When a man opens a savings account in his own name alone, he becomes at law the sole owner of the chose in action. But *Page 6 
equity, finding that a second person had an equal title to the money deposited, protects that title by charging the conscience of the depositor. He is a trustee ex maleficio of one-half the fund, and holds the other half for his own use.
In the case before me, Albert had no intention to deprive his sister, the decedent, of anything. When she was stricken on September 26th, 1944, all the nearest kindred immediately gathered, her sister Mrs. Knowles, and her brothers Charles and Albert. They feared she would die within a very few days; they talked over the savings account; they thought if it were immediately transferred to Albert alone, the transfer might not be taxable on her death. Charles drove Albert to the bank where, after consultation with a junior officer, Albert drew out the fund and redeposited it in his own name. He recognized that his title was subject to a trust during the lifetime of his sister, that he must apply whatever was necessary for her medical care and living expenses, and could use none for himself. This trust he does not appear to have violated.
Albert's beneficial title in the account both before and after September 26th, was subject to defeasance by his death in the lifetime of his sister. The event was so unlikely that none of the family seems to have given a thought to it. Whether his administrator, or his wife, after her name was added to the passbook, would have conceded the money to Miss Newschwander had she survived Albert, cannot be known. But nothing in the case justifies a finding that Albert schemed to defraud his sister of her right of survivorship, or any other right. Fraud is not presumed.
There is no equitable basis for charging Albert's title with any trust beyond the one he recognized. The Steinmetz line of cases does not apply. There may be a decree for defendants, but without costs. *Page 7