NORMAN R. STRYKER, EXECUTOR OF THE LAST WILL AND TESTAMENT OF EMMA A. SANDS, PLAINTIFF-APPELLANT, v. WILLIAM M. SANDS, INDIVIDUALLY AND AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF THOMAS S. SANDS, DECEASED, ET AL., DEFENDANTS-RESPONDENTS.

Argued February 6, 1950—Decided March 13, 1950.

*Mr. Samuel A. Sharff* argued the cause for appellant.

*Mr. William Abbolts* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J. Thomas S. Sands married his second wife, Emma A., in 1916 and died in July, 1938, leaving a

last will and testament wherein, after directing all his debts and funeral expenses be paid, he gave the rest, residue and remainder of his estate to his son, William M. Sands, and daughter, Elizabeth S. Hughes, in equal shares upon condition they "shall provide a home and maintenance for my wife, Emma A. Sands, for and during her natural life, if she shall so long remain my widow. In the event of her remarriage, this obligation on the part of my said son and daughter shall cease. The provisions heretofore made for my said wife, Emma A. Sands, shall be received and accepted by her in lieu of dower in my real estate." The will was dated June 28, 1937.

Shortly after the will was probated, Emma A. Sands executed several instruments at the request of the executors releasing her right of dower in and to the real estate owned by the decedent at the time of his death and accepted in lieu thereof the benefits stipulated in the will.

During the latter part of her life, Emma A. Sands alleged she was ill and had to expend various sums of money for medical expenses for which no reimbursement was made. In April, 1948, she brought suit in the Court of Chancery against the defendants, William M. Sands and Frederick W. Hughes, as executors under the will of Thomas S. Sands, against William M. Sands individually, and against Elizabeth Hughes, charging the defendants failed to furnish proper maintenance in accordance with her needs and necessities, causing her to expend substantial amounts of money for her maintenance; that she had become ill and was under the care of a physician and despite requests and demands the defendants refused to take care of such needs and had not properly maintained her in accordance with the terms of the will of her husband.

The cause was referred to Vice-Chancellor Jayne and, after a pretrial conference, it was set for hearing on December 15, 1948. On October 30, 1948, Emma A. Sands wrote a letter to Judge Jayne, so designated by the new Constitution, and to counsel in which she said she did not realize what it really meant when the suit was started and asked that it be discontinued "as I have always been satisfied with the support

that I have received from those in charge." As a result of this letter, an order of dismissal was filed December 1, 1948.

Emma A. Sands did not remarry. She died January 6, 1949, leaving a will executed June 29, 1937, which gave her estate to a son of an earlier marriage, Norman R. Stryker, and appointed him sole executor. On March 28, 1949, the son, as executor, filed his complaint setting forth the facts herein narrated and alleging he had expended the sum of $650 on account of the funeral expenses for the burial of Emma A. Sands and asking, amongst other things, that the defendants, William M. Sands and Elizabeth S. Hughes, be required to pay to him the medical expenses and funeral bills.

In a pretrial order it was stipulated the cause be decided upon the admitted facts therein contained. The court entered judgment for the defendants, holding the plaintiff's right to maintain the action as executor of the estate of Emma A. Sands rose no higher than that of the decedent in her lifetime and that the nature and extent of the maintenance to be furnished depended upon the intention of the testator as expressed in his will and the funeral expenses were not comprehended or included therein. Appeal was taken to the Appellate Division and certified here.

The disclaimer written by the testatrix, inferentially at least, indicates the litigation instituted in her lifetime was stimulated and coerced. She expressed a lack of knowledge as to its true import and a complete satisfaction with the support and maintenance received, being fully cognizant of the refusal of the executors of her husband's estate to pay the medical expenses allegedly incurred.

This conclusion was never changed during her lifetime but upon her death the claim she had waived and which she had directed in writing be discontinued and withdrawn was again made. She was satisfied but her contentment did not, together with her estate, descend to her heir, who shortly after her death demanded what she in her lifetime in effect had forgiven. The anxiety of the plaintiff to reverse the determination of his testatrix and selfishly acquire for himself what she never wanted is in part indicated by his premature

institution of suit on March 28, 1949, long before he was qualified as executor, which did not occur until April 26, 1949.

This was the factual background which the court leaned on heavily in disposing of the demand for medical expenses, holding the representative's right to maintain a particular action is no greater than the right possessed by the decedent.

 The testatrix in her lifetime expressed full satisfaction with the support she received and abandoned her claim for medical expenses after mature thought and consideration. The estate of the testatrix represented by the plaintiff is bound by the act of the testatrix. Her act is his act and her waiver of any of her rights is his waiver. *Levy v. N. Y. Life Ins. Co.*, 238 *App. Div.* 711, 265 *N. Y. Supp.* 377 (1933); affirmed, 266 *N. Y.* 570, 195 *N. E.* 204 (1935). By her letter she acquiesced in the defendants' contention that they had supplied adequate support to her and should not be held liable for the alleged medical expenses which were the basis of her original action and a part of the plaintiff's claim here. In a somewhat similar situation, the court, in *Topkis v. Delaware Hardware Co.*, 23 *Del. Ch.* 125, 2 *A.* 2d 114 (1938), held:

"If Louis Topkis were living and were the complainant in this bill and were admitted to have acquiesced in what the amendment of 1924 accomplished, he would not be heard after all these years to ask a court of equity to take from the individual defendants what he had freely bestowed and to undo transactions which, if he did not suggest, he was aware of and acquiesced in. His executor's rights can rise no higher than his."

So, here, the waiver and acquiescence of the plaintiff's testatrix should be, as it was, taken into consideration by a court of equity before it takes from these defendants money the plaintiff's testatrix did not think she was entitled to and to which she affirmatively disavowed any claim. We think there was justification for denying a recovery in this regard and are content with the disposition made by the court below.

 This, too, disposes of the question raised as to the court's right to receive and consider the contents of the letter referred to. The pretrial order recited that the earlier suit

was dismissed as a result of the letter, fairly presupposing that the court would consider its contents, which would seem necessary in order intelligently to pass upon the facts involved. Any statements made by the testatrix which would be evidential against her were she still living and the plaintiff in this suit are equally evidential against her executor. *Brice v. Atlantic Coast Electric Ry. Co.,* 102 *N. J. L.* 288 (*Sup. Ct.* 1926); *Stiles v. Newschwander,* 139 *N. J. Eq.* 1 (*Ch.* 1946). Why the truth or the motivating reason for the testatrix' change of attitude should be kept secret from a court striving for essential justice is beyond our comprehension. Material facts are not to be withheld and justice is not to close her eyes while the evidence is being offered and received. Careful scrutiny and full material disclosure are then the applicable rule. It is only after the testimony has been submitted and is about to be weighed and adjudicated that the legendary blindfold takes its customary place to signify impartiality.

The real question presented by the pleadings is whether the obligation to pay the funeral expenses of the widow rests upon the husband's estate under the terms of his will. A corollary question, not embraced by the pleadings but essential to a final determination of the issues raised, is whether there exists in this regard a liability imposed by law.

The common law rule, which has not been changed by statute, is that a husband who survives his wife is under a duty to provide a suitable burial for her and is primarily liable for her funeral expenses. *Watt v. Atlantic Safe Deposit & Trust Co.,* 92 *N. J. Eq.* 224 (*E. & A.* 1920); *Mondock v. Gennrich,* 19 *N. J. Misc.* 499 (*Dist. Ct.* 1941). This duty is based upon the fundamental concept of decency and humanity. *Gould v. Moulahan,* 53 *N. J. Eq.* 341 (*Prerog.* 1895). The husband's obligation ends upon his death, however, if he predeceases his wife and the primary liability then devolves upon her estate. In *Gould v. Moulahan, supra,* the court said:

"But for the husband's survival of his wife, the obligation to bury her and to pay the expense of that burial would rest upon the representative of her estate."

 This is the situation here, as Thomas S. Sands predeceased his wife by almost eleven years and it is nowhere claimed that his widow, at her death, was not possessed of a sufficient estate to provide a suitable burial. Under these circumstances, no obligation for the wife's funeral expenses is imposed by law on the estate of the husband.

In the absence of a legally imposed liability, does the husband's will charge his estate, in the hands of his children, with the obligation to reimburse the plaintiff for the widow's funeral expenses? The pertinent clause of the will directs that his children "shall provide a home and maintenance for my wife, Emma A. Sands, for and during her natural life, if she shall so long remain my widow." As held by the trial court, the nature and extent of maintenance to be furnished depend upon the intention of the testator expressed in his will. *Endicott v. Endicott*, 41 *N. J. Eq.* 93 (*Ch.* 1886).

"In construing a will, it will be presumed that the testator understood and intended the provisions thereof. As the courts are careful to discover and enforce testator's intention, but not to make a new will for testator, it follows that they constantly refuse to ascertain testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissible. The question always before the mind of the court is, not what should testator have meant to do or what words did. he mean to use, but what is the reasonable meaning of the words which he has actually used." 2 *Page, Wills* (3rd Ed. 1941), § 919, *p.* 810.

 The function of the court is only to construe the will that the testator has made, not to make a new will for him. *McGill v. Trust Co. of N. J.*, 94 *N. J. Eq.* 657 (*Ch.* 1923); affirmed with modification, 96 *N. J. Eq.* 331 (*E. & A.* 1924). The court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. *N. J. Title Guarantee & Trust Co. v. Dailey*, 123 *N. J. Eq.* 205 (*Ch.* 1938); *Summit Trust Co. v. McAuley Water St. Mission*, 125 *N. J. Eq.* 505 (*E. & A.* 1939).

In a very recent decision in *Burlington County Trust Co. v. Di Castelcicala*, 2 *N. J.* 214 (1949), Justice Case said:

> "Our first duty is to determine the intent of the testatrix, an intent to be drawn from the will *as written*, illuminated by such circumstances as existed at the date of the execution. We are not to guess what the testatrix would have done if she could have foreseen what would happen after her death, or to frame a document which we think would be a fitting last will and testament."

Only by a tortured construction of plain language and by adding something not expressed therein could a provision by the husband for maintenance "during her natural life" be extended to include expenses which could not possibly arise until after the wife's death. Such a construction would not be reasonable or logical nor in accord with the rules of construction laid down in the authorities cited. Under these circumstances, the phrase "natural life" does not include a period after death nor embrace funeral expenses which might not be determined until many years after his demise. To hold otherwise would not only do violence to the language here used by the testator but would saddle a husband's estate during all the years of his survivor's widowhood with a liability which he had not in his will assumed or provided for, unless he by express terms specifically excluded such contingency. This would be true even though the wife's separate estate was many times larger than his. We cannot judicially speculate as to what the testator might have intended to say in his will. Our obligation is to construe what he did say.

In *Wilson v. Staals*, 33 *N. J. Eq.* 524 (*Prerog.* 1881), one of many questions presented on exceptions to an executor's final account was whether the executor had authority to provide out of the residue of the estate for the burial of the testator's sister. The facts are materially at variance with those presently under consideration. The will left the entire residual estate to the testator's brother and sister for life, the income to be paid to them yearly for their support, with the provision that "if the interest should prove insufficient for the purpose, then so much of the principal as might be necessary for the purpose, should be applied thereto." The court, in its decision, stressed the fact that "these two persons, the legatees, were both poor" and pointed out one was a sickly imbecile and that, by the quoted provision of the will, "the

testator intended to devote to their support, for life, the entire *residuum* of his estate, if necessary for the purpose." The choice would have been between a charge against the deceased brother's estate and a pauper's burial and the court, under these circumstances, allowed the executor credit for the charge, stating:

"It is reasonable to hold that under the provision made by the will for Dowe and Jane, *neither of whom had any property*, expenses of their decent burial, if borne by the executor or trustee, would be allowable credits in his account. He paid the expenses of the burial of Jane. It cannot be doubted that the testator contemplated that the expenses of such burial should, *if necessary*, be paid out of the residue. *It seems to have been necessary* for the executor to provide for Jane's burial, and the amount expended for the purpose appears to have been reasonable." (Italics added.)

The basis for the decision seems to have been the indigency of the deceased sister. The burial expenses were allowed not so much from a construction of the will as from the duty imposed by law on next-of-kin with adequate means to provide decent burial for persons whose own estate was insufficient for that purpose. No comparable circumstances appear or are even suggested in the present case.

The general rule of construction applicable to provisions for support during a beneficiary's lifetime is stated in *In re Richey's Estate*, 251 Pa. 324, 96 A. 748 (1916). There, the husband left all his property except for one specific legacy to his wife for her life. She had power to sell the real estate and invest the proceeds and, in the event of such sale, she was to get the interest on the proceeds and so much of the principal as she might find necessary for her comfortable maintenance and support. In the accounting of the husband's estate, the executor claimed credit for expenditures for the wife's funeral expenses and gravestone. The credits were disallowed by the appellate court, which stated:

"There were two other items of credit claimed in the account and allowed by the court below, one of $256.65, to cover the funeral expenses of Mrs. Richey, and the other for $95, for a stone to place over her grave. This was error. There is nothing in the will of James M. Richey that justifies an expenditure out of his estate for either of these items."

Contractual provisions for the lifetime support of one of the parties have been likewise construed not to include burial expenses.

"We are quite content with the finding that the Hoyers were not bound under the contract to pay the funeral expenses of Mrs. Brandes. This was not part of their contract with the deceased. They agreed to care for her during life, not to bury her at death. If she had any estate, this estate was subject to claims for her funeral expenses." *In re Brandes' Estate*, 145 *Iowa* 743, 122 *N. W.* 954 (1909).

Similar holdings may be found in *Skeen v. Parsons*, 94 *W. Va.* 584, 119 *S. E.* 681 (1923); *Morris v. Fain*, 165 *Ga.* 879, 142 *S. E.* 119 (1928).

For the reasons recited, we find no obligation under the terms of the husband's will to pay the wife's funeral expenses.

The judgment is affirmed.

CASE, J. (dissenting). Plaintiff, executor of the will of Emma A. Sands, deceased, seeks a construction of the will of Thomas S. Sands, deceased, that will require reimbursement for medical expenses disbursed by plaintiff's testatrix in her lifetime and for burial costs paid by plaintiff after her death. The denial of reimbursement for medical expenses should be affirmed not because, as held below, the testatrix had brought and withdrawn a suit upon them in her lifetime but because it is not shown that the medical attention was reasonably necessary. Burial was, of course, necessary. The amount of the bill is not in controversy. The dispute is over the legal obligation of the defendants to pay. The question for decision is whether a testator, in charging the legatees and devisees of his entire estate, real and personal, with the burden of providing a home and maintenance for his wife during her natural life is to be understood, there being no evidence of purpose to the contrary, to have thereby directed that the cost of decent burial be included.

The case went in on a narrow stipulation of facts. All that we know with relation to the funeral item is this: Thomas S. Sands and Emma A. Sands were husband and wife. Sands died July 15, 1938, leaving a will which was probated and which directed that his debts and funeral expenses be paid

and that all the remainder of his estate, real and personal, should go to his son, William M. Sands, and his daughter, Elizabeth S. Hughes, in equal shares upon condition that they "provide a home and maintenance" for his wife for and during her natural life if she should so long remain his widow; such provisions to be accepted in lieu of dower. Mrs. Sands accepted the provisions in lieu of dower and did not remarry. She died January 6, 1949, leaving a last will and testament, the executor of which paid funeral expenses of $650. The making of that disbursement justifies the inference that Mrs. Sands at the time of her death was possessed of so much of an estate. Mrs. Sands' will was executed the day following that of her husband. Both wills were witnessed by the late Judge Erwin E. Marshall, and from those dates and that circumstance it may further be fairly inferred that the wills were the result of a joint impulse, that they were not only made with knowledge by each of the testators of what the other was doing but that they were both drawn and executed under the supervision of Mr. Marshall, known as an able and a careful practitioner. Significance, therefore, attaches to the fact that Mr. Sands' will contained the usual provision that the testator's debts and funeral expenses be paid upon his death, while Mrs. Sands' will contains no reference whatever to debts or funeral expenses.

The controlling factor is the testator's intent. Did or did not Mr. Sands, in directing that home and maintenance be provided for his wife during her natural life, mean to include a decent burial? The question may helpfully be generalized by asking whether, normally, a husband, under the relations ordinarily existing between husband and wife, would direct that his wife, throughout her life, was to be given home and maintenance without intending thereby to include the interment of her body at death. For a husband to charge his estate with the support of his wife during the remainder of her life and to leave his entire estate, charged with that burden, to his children is a natural course; to make such a provision with the intention that the wife is to be taken care of until death, but that her burial is no concern of the hus-

band and is not to be a charge upon his estate is, I suggest, not a natural course. Does it comport with common expectation that a husband should burden his entire estate—not merely the income therefrom—with the obligation to provide his wife throughout her life with a comfortable living, without, in so doing, intending to provide for that final act so inevitable to life, the laying away of her mortal remains? One shrinks from the thought that the mere absence of specific reference to burial from a provision for a wife's support throughout her life should be interpreted as an intention that at the solemn moment when breath shall cease the husband's provision shall also cease and the body be left unattended where it may chance to be. Burial is the dropping of the curtain at the end of life's drama. Action is over, but the lowering of the curtain is, by ancient and common acceptance, an incident of the play.

It is truly said that we may not add to the will that which is not there; but my view is that the direction *is* there. Lacking proof of facts which indicate a purpose to the contrary, a direction by a husband in his will that his wife be given suitable support throughout her life should be interpreted as manifesting an intent that at death, the culmination of life, she shall be buried. It is conceivable that for reasons peculiar to a particular case a husband may wish to withhold the cost of his wife's interment, but such an instance would be an exception from the ordinary course and the burden of proof should be upon him who asserts the fact so to be.

It is argued that here the wife had a separate estate which the husband could have anticipated would be sufficient to meet the costs of her burial. That reasoning and the inferential purpose could have existed, but we have no proof that they did exist. Such small sidelights as we have, as, for example, the absence from Mrs. Sands' will, drawn and executed under the circumstances mentioned above, of the usual direction that the executor shall pay funeral expenses from the decedent's estate, indicate that they did not. Let us assume a frequently occurring event—the husband directs in his will that his estate shall provide support for his wife

throughout her life, and the wife has a small estate of her own. There is no assurance that the latter estate will outlast the wife; if it does not, or if it proves insufficient, shall she be given a pauper's burial, there being ample funds in her husband's estate to meet that expense? The pertinence of this line of thought is its bearing upon what a husband is ordinarily to be understood as having in mind when he makes such a provision. There is nothing to suggest the alternative that the expense will be upon the husband's estate if the wife has not sufficient funds or will be excluded if she has. The provision either does or does not cover the item.

In *Wilson v. Staats,* 33 *N. J. Eq.* 524 (*Prerog.* 1881), Henry M. Wilson died leaving a will which gave all the residue of the estate to be divided equally between the testator's sister Jane and his brother Dowe, "the money to be put on bond and mortgage and the interest to be paid them yearly, for their support," with the further provision that "if the interest should prove insufficient for the purpose, then so much of the principal as might be necessary for the purpose, should be applied thereto." There was a gift over of the principal, or what remained of it, at the death of Jane and Dowe. The named beneficiaries were indigent and on Jane's death Wilson's executor paid her burial expense. On the accounting the item was disputed. The court held that the funeral expenses were necessaries and allowed the item. The direct bearing of the decision, which has never been overruled, is that it fairly involved a finding that under the circumstances of the case the funeral expense came within the reach of the testamentary provision for support.

The courts of Pennsylvania have apparently taken a position the other way, *In re Richey's Estate,* 96 *A.* 748 (*Sup. Ct. of Pennsylvania,* 1916), although the finding is not accompanied by reasoning, and the case of *Lawall v. Kreidler,* 3 *Rawle* (*Sup. Ct. of Pennsylvania,* 1832), cited as having some pertinence, goes upon a question with which we are not concerned, viz., the obligation of an estate of a deceased husband, *per se,* to answer for the funeral expense of a wife who survived him.

50 *Am. Jur., Support of Persons*, § 12, *p*. 877, carries the statement that provisions for life support have generally been interpreted as not to include the payment of funeral expenses, resting that statement upon a footnote citing *"Anno:* 101 *A. L. R.* 1501." Such of the cases named in the cited reference as relate to burial expenses are *In re Van De Walker* (1913), 79 *Misc.* 661, 141 *N. Y. S.* 325; *Richey's Estate, supra; In re Brandes*, 145 *Iowa* 743, 122 *N. W.* 954 (*Sup. Ct. Iowa*, 1909); *Morris v. Fain*, 165 *Ga.* 879, 142 *S. E.* 119 (*Sup. Ct. of Ga.* 1928), and *Skeen v. Parsons*, 94 *W. Va.* 584, 119 *S. E.* 681. *In re Van De Walker* was a case wherein a husband gave, by will, the use of all of his property to his indigent widow for life with a right to as much of the principal as should be necessary for her maintenance. It was held that the intention was to have her burial expenses paid out of the estate. That is in line with my view. *In re Brandes, Morris v. Fain* and *Skeen v. Parsons* are distinguishable in that they passed, not upon a provision made in a husband's will for his wife's suport, but upon the effect of agreements made at arm's length on consideration wherein persons apparently not related to those for whom the benefit ran undertook to render care or provide support for life and were held not to be chargeable under their respective contracts with burial expenses. On the other hand, *McKnight v. McKnight*, 180 *N. W.* 437 (*Sup. Ct. of Mich.* 1920), in construing an agreement entered into on consideration to support, care for and provide a woman with a home during her natural life, held that the obligation fairly implied board, lodging, clothing, care and incidental necessities commensurate with her customary condition and walk in life, and also proper care, nursing and medical attendance in sickness and suitable burial at death. It is of interest to note that an obligation imposed by statute to support has been held to include funeral expense. *Phillips v. Home Undertakers*, 192 *Okla.* 597, 138 *P.* 2d 550.

*Matter of Frayer*, 155 *Misc.* 811 (1935); affirmed, 246 *App. Div.* 703, was in the Surrogate's Court of New York County, N. Y. The testator had given $15,000 to a trustee

in trust to collect and receive the income and apply such income to the use of one Elizabeth Harned during her natural life, with power in the trustee, at discretion, to pay over to the beneficiary or for- her account any part or the whole of the principal of the trust fund. It was held that there was no gift of principal, that the gift was of a simple trust and that the remainder passed under the residuary clause but that, Mrs. Harned having died insolvent, the principal of the fund should be applied to the payment of the burial expense and that such was the testator's intent. The opinion followed the decision in *In re Estate of James Montgomery, Deceased,* 129 *Misc.* 14 (*New York Surrogate's Court, Monroe County,* 1927), wherein a trustee was, by will, directed to pay over to the beneficiary, a daughter, all the income and so much of the *corpus* as the trustee might from time to time deem necessary for the support and maintenance of the beneficiary during her lifetime. It was held in the *Montgomery case* that the trustee should be allowed credit for the amount of the funeral bill arising from the beneficiary's death, she having died without property of her own, although the will gave no direction as to funeral expenses. It was said that where a testator goes beyond mere income for support and shows a desire to have even the principal itself consumed in order to maintain his bounty he is deemed to have intended that such beneficiary should not only have every ordinary incident of the comfortable station in life which his liberality was maintaining, but to have further intended not to bring the scene to a disgraceful close "by stopping short at death and abandoning the body of the beneficiary to be buried, perhaps, as a pauper."

*Dooley v. Penland,* 156 *Tenn.* 284, 300 *S. W.* 9 (*Sup. Ct. Tenn.* 1927), is a holding that under a husband's will leaving funds in trust for the support of his widow during her life a funeral bill was properly paid from income in the hands of the trustee at her death.

In *Wooten's Trustee v. Hardy,* 221 *Ky.* 338, 298 *S. W.* 963 (*Ky.* 1927), Mr. Wooten, a widower, was survived by an only daughter, then sixteen years of age. His will di-

rected that his property with certain exceptions be turned over to his daughter's trustee, the interest to be used for her support and maintenance, the principal not to be encroached upon unless in the judgment of her trustee "it becomes necessary for her proper support and education," that upon her becoming "twenty-five years of age, if she live so long," one-fifth of the principal to be paid to her "annually until she is thirty years of age, if she so long live." The will further provided that if the daughter should die without issue various gifts over should take effect. The daughter died at the age of twenty-one years, unmarried, and without issue. At her death a dispute arose between her executor and the heirs at law of her father over several questions, one of them being the obligation of her father's estate to pay her funeral bills. The court held: "Under the facts of this case it is * * * evident that the testator intended the burial expenses of his daughter to be embraced in her maintenance. Though the spirit departed, the sacred form remained; it was his daughter's body and he desired it properly maintained (interred) (*sic*). The language of the will is broad enough to embrace the expenses thereby incurred, and the trust estate was created as much for this as for her maintenance during life; in this respect being entirely dissimilar from a devise of a life estate with remainder over where the entire estate passes at once upon the death of the first taker."

*Bogert on Trusts and Trustees, Part* 1 of *Volume* 4, § 812, *page* 180, discussing generally the extent of the term "support" when used in a trust provision, says:

"A trustee has been held entitled to include under the term 'support' * * * the payment of debts and funeral expenses after the life *cestui's* death."

And *Scott on Trusts, Volume* 1, § 128.4, *page* 674, in a similar discussion, states:

"Ordinarily it would seem that if there are trust funds available for the purpose of paying funeral expenses, at least if the beneficiary left no property sufficient for the purpose, the trustee has the power and the duty to pay the funeral expenses of the beneficiary for whose support the trust was created."

Those textbook comments and a number of the cited cases were written of trusts generally. I suggest that a husband providing by will for his surviving wife is in special case; that more liberal construction in the wife's favor may be given than where the trust is established, even by will, for persons more distantly related or not related at all; that the provision for a wife by will is certainly deserving of more liberal construction than is a provision in similar language contained in a contract made for consideration between persons not so related; and that the conditioning of the gift of a husband's entire estate to others upon the providing of home and maintenance for his wife during her life imports a generous solicitude which is foreign to the striking out of burial expenses.

I conclude that the question posed at the beginning of this opinion should be answered in the affirmative, that Mr. Sands intended by the provisions in his will to include the funeral expenses of his wife as a charge upon his estate, and that the judgment below, to the extent of those expenses, should be reversed.

I am authorized by the Chief Justice and Mr. Justice Oliphant to state that they join in this dissenting opinion.

*For affirmance*—Justices HEHER, WACHENFELD, BURLING and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE and OLIPHANT—3.